David Cash MOORE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–97–00920–CR, 14–97–00921–CR and 14–97–00922–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 28, 1999.

Ned Gill, III, Houston, for appellants.

John Harrity, Pedro Ruiz, Richmond, for appellees.

Before Justices MAURICE AMIDEI, EDELMAN, and SEARS (Senior Justice Sears, sitting by assignment).

## OPINION

MAURICE E. AMIDEI, Justice.

In this consolidated appeal, David Cash Moore appeals his three convictions for: (1) aggravated sexual assault of S.M. (Sean), a child under fourteen years of age; (2) indecency with J.H. (Justin), a child under seventeen years of age; and (3) indecency with J.R. (Joshua), a child under seventeen years of age. After Sean testified in the jury trial of appellant's aggravated sexual assault case, appellant elected to waive his right to trial by jury and plead no contest to all three charges pursuant to a plea bargain agreement with the State. After receiving "Defendant's Plea of Guilty or Nolo Contendere—Written Admonitions, Waiver of Statutory and Constitutional Rights, and Written Stipulation and Judicial Confession" in these cases, the trial court further orally admonished appellant as to the punishment range of each offense and had a lengthy exchange with appellant as to the knowing and voluntary nature of his plea. After appellant agreed that he did not want to resume the jury trial, and wanted to plead no contest for the punishment agreed to, the trial court approved the plea bargain and assessed his punishment at 28 years imprisonment for the aggravated sexual assault of Sean, and 20 years each for the two other indecency cases, the sentences running concurrently. The punishment assessed did not exceed the recommended punishments in the plea bargains. In three points of error, appellant contends his pleas were involuntary as the result of ineffective assistance of counsel, and the trial court erred in denying his motion for new trial without a hearing. We affirm.

## I. BACKGROUND.

Appellant was charged with two counts of aggravated sexual assault of Sean, a child under fourteen, that occurred on or about August 1, 1991, and October 31, 1993, by causing Sean's penis to contact and penetrate the mouth of appellant. Appellant was further charged with one count of indecency with Justin, a child under seventeen, by unlawfully touching Justin's genitals on or about November 1, 1993. Appellant was also charged with unlawfully touching Joshua's genitals on or about January 1, 1993. The jury trial on the aggravated sexual assault of Sean commenced June 4, 1997. Sean, who was twelve years old at the time of trial, testified to numerous incidents of appellant's performing oral sex on him starting when Sean was six or seven years old. Sean also testified to numerous instances of appellant's fondling Justin. After Sean testified, appellant decided to plea bargain with the State. After signing the written plea papers, appellant appeared before the trial judge and was orally admonished of the consequences of pleading no contest. After a lengthy exchange with the trial judge, appellant stated he did not want to continue the trial, wanted to plead no contest to the charges, and he understood the trial court would find him guilty and assess punishment as recommended by the State in their written agreement. Thereafter, appellant filed a motion for new trial on the three cases alleging ineffective assistance of trial counsel for failing to investigate appellant's alleged alibi defenses, and for failing to challenge the 1991 aggravated sexual assault count because the five year statute of limitations had expired before he was indicted for this offense. Appellant further contended that trial counsel erroneously advised him to plead no contest to the offenses. The trial court denied the motion for new trial without holding a hearing, and appellant then filed a general notice of appeal only on August 13, 1997, without permission of the trial court.

## II. JURISDICTION.

Initially, we are confronted with appellant's failure to comply with either former rule 40(b)(1), Texas Rules of Appellate Procedure, or the present rule 25.2(b)(3), requiring permission of the trial court to appeal. According to the court of criminal appeals, we must apply the new

rules to any case pending on September 1, 1997, the effective date of rule 25.2(b)(3), Texas Rules of Appellate Procedure, unless that application "would not be feasible or would work injustice." *See* Court of Criminal Appeals Final Approval, 60 TEX. B.J. 876 (Tex.Crim.App.Aug.1997); *Villanueva v. State,* 977 S.W.2d 693 (Tex. App.—Fort Worth 1998, no pet.). In *Villanueva,* the appellant perfected his appeal on October 11, 1996, before rule 25.2(b)(3) was in effect. The appeal was pending after September 1, 1997, when the new rule became effective. The new rule 25.2(b)(3) provides:

> [I]f the appeal is from a judgment rendered on the defendant's plea of guilty or nolo contendere under Code of Criminal Procedure article 1.15, and the punishment assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the notice must:
> (A) specify that the appeal is for a jurisdictional defect [new];
> (B) specify that the substance of the appeal was raised by written motion and ruled on before trial [same as old rule]; or
> (C) state that the trial court granted permission to appeal [same as old rule].

The *Villanueva* court held that an appellant may only challenge the voluntariness of his plea when he first obtains permission from the trial court because voluntariness is neither jurisdictional nor a pretrial matter. *Id.* at 696. The court held that "under the new rule we would not have jurisdiction to reach the merits of appellant's claim." *Id.* However, the court found that such a result would be an injustice in that case, and applied the old rule under *Flowers v. State,* 935 S.W.2d 131, 134 (Tex.Crim.App.1996), that a plea-bargaining defendant who failed to comply with the notice requirement of rule 40(b)(1) could nevertheless challenge (1) jurisdictional issues and (2) the voluntariness of his plea. *Id.* at 696. Part (A) of 25.2(b)(3), adds the additional requirement

that the notice must "specify that the appeal is for a jurisdictional defect," or specify matters that were raised by written motion and ruled on before trial, or state that the trial court granted permission to appeal (now (B) and (C) of the new rule).

■ Two court of appeals cases since *Villanueva* disagree with the analysis in that case, and held that the right to challenge the voluntariness of a plea can always be challenged on appeal under *Flowers. See Session v. State,* 978 S.W.2d 289, 291 (Tex.App.—Texarkana 1998, no pet.); *Johnson v. State,* 978 S.W.2d 744, 745–46 (Tex.App.—Eastland 1998, no pet.). We agree with the Texarkana and Eastland courts that the voluntariness of a plea can always be challenged on appeal as a fundamental right. Therefore, we hold that appellant in this case has a right to appeal *only* the voluntariness issue. *Flowers,* 935 S.W.2d at 134; *Session,* 978 S.W.2d at 291–92.

### III. STANDARD OF REVIEW.

The U.S. Supreme Court established a two prong test to determine whether counsel is ineffective at the guilt/innocence phase of a trial. First, appellant must demonstrate that counsel's performance was deficient and not reasonably effective. Second, appellant must demonstrate that the deficient performance prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Essentially, appellant must show (1) that his counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms, and (2) that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id; Hathorn v. State,* 848 S.W.2d 101, 118 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 932, 113 S.Ct. 3062, 125 L.Ed.2d 744 (1993). A reasonable probability is defined as probability sufficient to undermine confidence in the outcome. *Miniel v. State,* 831 S.W.2d 310, 323 (Tex.Crim.App.1992).

Judicial scrutiny of counsel's performance must be highly deferential. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. An ineffectiveness claim cannot be demonstrated by isolating one portion of counsel's representation. *McFarland v. State,* 845 S.W.2d 824, 843 (Tex. Crim.App.1993). Therefore, in determining whether the *Strickland* test has been met, counsel's performance must be judged on the totality of the representation. *Strickland,* 466 U.S. at 670, 104 S.Ct. 2052. The defendant must prove ineffective assistance of counsel by a preponderance of the evidence. *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App. 1984).

A trial court's denial of a motion for new trial will not be disturbed absent a clear showing of abuse of discretion. *State v. Gonzalez,* 855 S.W.2d 692, 696 (Tex.Crim. App.1993).

In determining whether a guilty plea made upon advice of counsel is constitutionally valid, we look to see whether counsel rendered effective representation for the defendant during the proceeding. *Ex parte Battle,* 817 S.W.2d 81, 84 (Tex.Crim. App.1991). The test for ineffective assistance of counsel during the plea process is to show that counsel's representation fell below an objective standard of reasonableness and that this deficient performance prejudiced the defense. *Battle,* 817 S.W.2d at 83. To show prejudice in the context of a guilty plea, the defendant must show a reasonable probability that, were it not for counsel's errors, he or she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985); *Toupal v. State,* 926 S.W.2d 606, 607 (Tex. App.—Texarkana 1996, no pet.)

## IV. DISCUSSION.

Appellant contends that his pleas were the product of (1) trial counsel's abandonment of any objection to the introduction of inadmissible extraneous offenses during the trial proceedings, and (2) trial counsel's failure to conduct an adequate investigation into appellant's defenses. Appellant argues his pleas were rendered involuntary because they were induced by the advice of trial counsel to seek a negotiated settlement based upon the likelihood of convictions. Appellant further argues he was advised that sentences of life imprisonment by the jury would result from the absence of any viable defense and the introduction of evidence of extraneous sexual offenses against other children.

A. Inadmissible extraneous offenses. Appellant contends his trial counsel, Mr. Grady F. Thompson, failed to object to the State's opening statement to the jury concerning the testimony of the three child victims. Appellant also contends that S.M. was permitted to testify about sexual offenses committed against J.H. without objection. Appellant argues that testimony of these extraneous bad acts were not admissible under rule 404, Texas Rules of Criminal Evidence (repealed, now Texas Rules of Evidence), nor under article 38.37, Texas Code of Criminal Procedure, concerning admission of extraneous offenses or acts committed by the defendant against the child who is the victim of the alleged offense.

We fail to see how article 38.37 applies to the admissibility of extraneous acts of third parties, and appellant does not explain how S.M.'s testimony about appellant's indecency with J.H. violates article 38.37. Appellant now argues that the introduction of the extraneous bad acts, without objection, caused him to change his plea to nolo contendere. The record contains the transcription of the pretrial hearing on the outcry statement of S.M.'s mother under article 38.072, Texas Code of Criminal Procedure (hearsay statements of child abuse victims). Although the State told the trial court that it had furnished Mr. Thompson a complete list of all of the

extraneous acts, and had complied with the notice requirement of rule 404(b), Texas Rules of Criminal Evidence (in effect at the time of trial), the trial court did not rule on the admissibility of the proposed testimony of S.M. concerning alleged acts of indecency with J.H. The record shows that the trial court advised the State and Mr. Thompson it would hear any objections to these extraneous acts before trial the following day. There is no record of any such hearing the following day on the admissibility of the extraneous offenses. The State argued at the hearing on the outcry statement that the extraneous acts would be introduced in the testimony of S.M, and the other victims, to show motive and "absence of mistake" on the part of appellant, which would make such evidence admissible for other purposes under rule 404(b), Texas Rules of Criminal Evidence. At this first hearing on these matters, appellant personally addressed the court concerning a possible plea of nolo contendere, advising the court that he interpreted the court's ruling as allowing evidence of the extraneous acts at the trial. The trial court advised appellant to talk to Mr. Thompson.

At the conclusion of S.M.'s testimony before the jury about numerous acts of oral sex upon him by appellant, appellant entered his plea of nolo contendere. The trial court asked appellant if anybody had threatened or coerced him, or had promised him anything to sign the plea papers. Appellant told the judge that it was in his "best interest to go ahead and accept the plea bargain because I can't win this case." Appellant acknowledged that he had talked to Mr. Thompson about the plea papers, and stated he signed them and that "if I don't sign that I'm going to get life." Appellant further advised the judge that he "was told you [trial judge] didn't like the way this case was going and . . . at this point that it would be in my best interest to go ahead and work something out with the district attorney." The judge stressed that he had no personal interest in the trial, and appellant had a valuable right to a jury trial that required a unanimous verdict before he could be convicted and sentenced. The judge told appellant that the trial court had to be convinced that appellant is pleading no contest because he wants to, not because someone has forced him to. Appellant then stated he felt he was threatened and that was why he signed the papers. The judge then told appellant he could not take his plea because it would be "induced by fear or threats or something like that." Appellant replied: "It's definitely induced by fear. Here I'm facing—you know." The judge stated:

> I understand that. If you're convicted, I'm sure there's a great fear that the jury in this case may give you life in the penitentiary. That's part of the penalty range. I understand that fear. If you're motivated to enter a plea of guilty because you are not certain what this jury could do to you, I understand that; but what I need to hear from you is that you've looked over these papers; and you believe it's in your own best interest to waive these rights and accept the State's recommendation, whatever that recommendation might be in this case, instead of, in effect, rolling the dice with the jury on the first issue of whether or not they're going to find you guilty and, if they do find you guilty, rolling the dice on the second round on what they might assess your penalty as. Do you understand what the range of punishment is?
>
> THE DEFENDANT [Appellant]: I'm waiving my right to roll the dice.

The judge then asked appellant if he had talked to his lawyer about signing the plea papers, and he stated he had.

The trial judge then advised appellant:

> I don't want to go into the substance of the conversations you've had with your lawyer; but, based in part on the conversations you've had with your lawyer about his impressions about the testimony from the witnesses, that's part of the reason you want to give up your right to

a jury trial and enter a plea of no contest today?

THE DEFENDANT [Appellant]: Yes, Your Honor.

Mr. Thompson then told the judge he had discussed the plea papers with appellant, and that appellant was mentally competent. The trial judge then admonished appellant as to the range of punishment for aggravated sexual assault, and asked him if the initials on the plea documents were his. Appellant acknowledged he signed all the plea papers and sat with Mr. Thompson, and Mr. Thompson went over all the papers with appellant before appellant initialed them. Mr. Thompson advised the judge that appellant knowingly and voluntarily signed all the plea papers. The judge explained the nature of a "no contest" plea, and then asked appellant what he wanted to do. Appellant replied: "I'm changing my plea from not guilty to no contest." The judge found appellant competent to enter the plea, and that he had entered the plea to aggravated sexual assault of S.M. freely and voluntarily. Thereafter, the judge told him that he could still find appellant guilty of the offense, even if he pleaded no contest. Appellant stated he wasn't aware of that, and the judge explained in detail the concept of a no contest plea, and that he would be found guilty, but the punishment would not exceed the 28 years recommended by the State. Appellant acknowledged that he understood. When asked if he wished to set aside his plea and "bring the jury back in," he told the judge: "No, not at all." Thereafter, appellant entered a plea to the other two indecency charges.

Nowhere in the record is there any reference to Mr. Thompson's advising appellant to change his plea. Appellant never indicated that his change was due to anything other than his own personal feelings that the jury would give him life imprisonment. There is nothing in the record indicating that Mr. Thompson gave him any kind of erroneous advice on entering his plea. In the plea papers, appellant stipulated to all the evidence, waived all of his rights, and acknowledged that the plea was voluntarily entered without coercion, duress, or persuasion of any kind. Furthermore, appellant acknowledged: "That I have consulted fully with my attorney before entering my plea and am satisfied that my attorney has properly represented me." The plea papers were approved by the trial court.

Whether the extraneous offenses of other acts with third parties were admissible into evidence is questionable. In sexual abuse cases, where the defendant has denied the act, admission of other acts committed by the defendant against the complainant are generally admissible. *Castoreno v. State*, 932 S.W.2d 597, 600 (Tex.App.—San Antonio 1996, pet. ref'd). Evidence of extraneous acts between a defendant and a third party are admissible to rebut a defensive theory that the defendant was being framed. *Id.* In this case, Mr. Thompson's opening statement to the jury was that appellant was not guilty, and that the parents of the victims had "an ax to grind with the Moores; and they involved these children to make these allegations." The evidence was arguably admissible to rebut appellant's defensive theory. *Id.* The failure to object to admissible evidence does not constitute ineffective assistance of counsel. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App.1992). Because the record does not reveal any further hearing with respect to the State's notice of extraneous acts under rule 404(b), Texas Rules of Evidence, we do not know why Mr. Thompson did not object to S.M.'s testimony about appellant's indecency with J.H. *See Chambers v. State*, 903 S.W.2d 21, 34 (Tex.Crim.App.1995). We can only speculate that Mr. Thompson felt the evidence was admissible, or it would not be good trial strategy to object to this evidence. Isolated failures to object to improper evidence or argument do not constitute ineffective assistance of counsel. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim.App.1984); *Ewing v. State*, 549

S.W.2d 392, 395 (Tex.Crim.App.1977). An appellate court will not use hindsight to second guess a tactical decision made by trial counsel which does not fall below the objective standard of reasonableness. *Solis v. State,* 792 S.W.2d 95, 100 (Tex.Crim. App.1990). Because of the lack of evidence in the record to indicate Mr. Thompson's reasons for failing to object to S.M's testimony about appellant's indecency with J.H., we find trial counsel's performance was not deficient. *Chambers,* 903 S.W.2d at 34. Allegations of ineffective assistance of counsel will only be sustained if they are firmly founded in the record. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). Appellant does not point to any evidence in the *record* that establishes his counsel's decision fell below an objective standard of reasonableness. Furthermore, appellant has failed to show prejudice in the context of a guilty plea; he has not shown there was a reasonable probability that, were it not for counsel's errors, he would not have pleaded nolo contendere and would have insisted on going to trial. *Toupal v. State,* 926 S.W.2d 606, 607 (Tex. App.—Texarkana 1996, no pet.). Appellant's sub-point of error concerning lack of voluntariness because of trial counsel's failure to object to extraneous acts is overruled.

B. Failure to raise limitations defense. Appellant contends the first count in his indictment for aggravated sexual assault on S.M. in 1991 was barred by the five year statute of limitations because the indictment was filed more than five years after the date of the alleged offense. Even though the State dismissed this count, appellant contends the State introduced evidence by S.M.'s testimony that this offense took place in 1991 without objection by Mr. Thompson. Appellant contends his counsel was ineffective for failing to raise the limitations defense to the aggravated sexual assault count that occurred in 1991, and failing to object to evidence of this act introduced into evidence by the State.

■ The statute of limitations for aggravated sexual assault under section 22.021(a)(2)(B), Texas Penal Code (where the victim is younger than fourteen years of age) is ten years, not five years as suggested by appellant. *See Ford v. State,* 908 S.W.2d 32, 35 (Tex.App.—Fort Worth 1995, pet. ref'd). The indictment in this case was filed on April 21, 1997, alleging two counts of aggravated sexual assault on S.M. by appellant, the first count for an assault that occurred on or about August 1, 1991, and the second count for an assault that occurred on or about October 31, 1993. The State proved offenses that occurred in the summer of 1991, around Halloween in 1993, and July 4, 1996, well within the ten years before the date of the indictment. "It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App.1997). Appellant's counsel was not ineffective on the grounds that the 1991 count was barred by limitations. The 1991 count was not barred by limitations, and appellant's sub-point contending ineffective assistance and involuntariness of his plea because of limitations is overruled.

■ C. Advice of Counsel. Appellant also argues that because of erroneous advice of his trial counsel, he decided to change his plea. We discussed this point above under extraneous offenses. The record does not sustain appellant's contention that Mr. Thompson advised him to change his plea. There is nothing in the record indicating Mr. Thompson said anything to appellant about his plea. Appellant never stated on the record that he was changing his plea on the advice of his trial counsel. He signed all the plea papers indicating he was freely and voluntarily entering his no contest plea. The decision to plead guilty or nolo contendere is the personal decision of the accused.

*Jackson v. State,* 766 S.W.2d 504, 508 (Tex. Crim.App.1985). The duty of counsel when a plea of guilty or nolo contendere is entered is to ascertain whether the plea is being entered knowingly and voluntarily. *Butler v. State,* 499 S.W.2d 136, 139 (Tex. Crim.App.1973); *Toupal,* 926 S.W.2d at 607. At the plea hearing, Mr. Thompson advised the trial court that, in his opinion, appellant was entering his plea knowingly and voluntarily. Accordingly, Mr. Thompson was not ineffective for this reason. Appellant's sub-point contending his plea was involuntary because of bad advice is overruled. Appellant's points of error one and two are overruled.

## V. MOTION FOR NEW TRIAL

In his third point of error, appellant contends he had alibi defenses and that he told Mr. Thompson about them. Appellant filed a motion for new trial and attached several affidavits from friends attesting to his being with them on various dates of the offenses as alleged in the indictments. Appellant argues that his motion for new trial raised the issue of involuntariness in the pleas resulting from the ineffective assistance of counsel. Appellant asserts that the names and telephone numbers of these witnesses were provided to Mr. Thompson in advance of the trial, along with the substance of their testimony. Appellant argues that Mr. Thompson was ineffective for failing to contact the witnesses and check their stories. Appellant contends the trial court erred by refusing grant him a hearing on his motion for new trial.

We cannot ascertain from the record why Mr. Thompson did not contact these witnesses. The State had only to prove that the offenses occurred "on or about" the dates alleged in the indictments, and that the dates "are anterior to the presentation of the indictments." *See Sledge v. State,* 953 S.W.2d 253, 256 (Tex.Crim.App. 1997). The only suggestion of a defense by the affidavits was an alibi defense. The affidavit of Richard Randall Rogers states

that Rogers and appellant began loading appellant's truck with band equipment at 4:00 p.m. on October 31, 1993, and then they went to Baytown and played a "particularly memorable gig" and returned to Houston around 5:00 a.m., November 1, 1993. The affidavit does not state what appellant was doing before 4:00 p.m., October 31, 1993, and after 5:00 a.m., November 1, 1993. The testimony of S.M. was that appellant performed oral sex on him sometime around Halloween, 1993. The affidavits do not disprove the fact that appellant abused S.M. "around Halloween." The affidavit of Gregory Baldassari states that he visited Mike Martin's house in April 1993, and noticed the furniture in his house and it was "obvious to me that the man known to me as Mike Martin was the resident and occupant of that house." The affidavit is speculative because Mike Martin's presence and ownership of the house was just assumed by the affiant. The affidavit of Diana Lynn Lackey states she was "advised by the realtor [of some house located at 14311 Old Village Lane] that the house had been vacant since before Christmas, 1993." The affidavit makes no mention of where the alleged owner, Mike Martin, was or what he had to do with the premises, and is purely speculative as to Martin's alleged occupancy of the house during the alleged offense at the premises between December 1992 and December 1993. The affidavit of Jerry Lee Boeticher was that appellant picked him upon "on the afternoon of New Year's Eve, December 31, 1992" and they did not get back "home" until 8:00 a.m., January 1, 1993. The affidavit proves nothing about appellant's activities before the unknown time stated only as "the afternoon of New Year's Eve, December 31, 1992." The affidavit of appellant's wife, Lynette Marie Moore, states she contacted Mr. Thompson about the alibi witnesses, but concludes that he did nothing. The affidavit is conclusory and does not prove ineffective assistance.

Mr. Thompson could have found that appellant had no alibi defense by these witness statements, and that this testimony could hurt appellant more than help. However, the reasons for not contacting these witnesses does not appear in the record and we will not speculate why Mr. Thompson did not contact the witnesses. In *McFarland v. State,* 928 S.W.2d 482, 502 (Tex.Crim.App.1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997), the court of criminal appeals, clarified the duty to investigate in light of *Strickland,* as follows:

> Ordinarily counsel should not blindly rely on the veracity either of his client's version of the facts or witness statements in the State's file [citation omitted]. But this duty to investigate, at least since *Strickland* was decided, is not categorical. Rather, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Such a decision not to investigate "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* In any event, we will not reverse a conviction unless the consequence of the failure to investigate "is that the only viable defense available to the accused is not advanced[,]" *Ex Parte Duffy,* supra [607 S.W.2d 507], at 517 [Tex.Cr.App.1980], and "there is a reasonable probability that, but for counsel's [failure to advance the defense], the result of the proceeding would have been different." *Strickland,* supra, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

*McFarland,* 928 S.W.2d at 501.

There is nothing in the record to show that potential defenses were precluded or that a visit with these witnesses would have made any difference in appellant's defense. Appellant fails to satisfy, if the not the deficiency prong of *Strickland,* then the prejudice prong. *See McFarland,* 928 S.W.2d at 501–02. We find that appellant cannot show a reasonable probability that had counsel independently investigated, the result of the proceeding would have been different. *Id.*

■ The right to an evidentiary hearing is not an absolute right. *Reyes v. State,* 849 S.W.2d 812, 815 (Tex.Crim.App. 1993). A hearing is necessary if the affidavits show reasonable grounds which would entitle appellant to a hearing on the motion. *Jordan v. State,* 883 S.W.2d 664, 665 (Tex.Crim.App.1994). We find appellant has not raised matters which would entitle him to relief. *Reyes,* 849 S.W.2d at 816. The matters raised for failing to investigate potential alibi witnesses involved a matter of trial strategy on the part of trial counsel, and appellant has not proved his defense was prejudiced as a result of trial counsel's failure to investigate and that the result would have been different. We find the trial court did not abuse its discretion in denying a hearing on appellant's motion for new trial, because there were no reasonable grounds for holding that relief could be granted. We overrule appellant's point of error three and affirm the judgment of the trial court.