Affirmed and Opinion filed June 20, 2002









Affirmed and Opinion filed June 20, 2002.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-00569-CR

____________

 

CHAD SPENCER CALVERT,
Appellant

 

V.

 

THE STATE OF TEXAS,
Appellee

 



 

On
Appeal from the 177th District Court

Harris County, Texas

Trial
Court Cause No. 856,837

 



 

O
P I N I O N

In
four issues, Chad Spencer Calvert appeals his conviction and 12 year sentence
for aggravated assault following a trial to the bench.  Appellant contends the trial court erred
in:  (1) admitting statements allegedly
made by a deceased person; and (2) overruling his motion for new trial.  Appellant also alleges his trial counsel was
ineffective (3) at the guilt-innocence and (4) sentencing phases of trial.  We affirm.

Background








Appellant
and the complainant, Andrew Wilson, spent part of Friday, April 7, 2001,
drinking with Blaine Robinson.  Robinson
lived in a trailer on property located behind the home of Dawn Hernandez.  Wilson testified he consumed six 16-ounce
beers between 3:00 p.m. and the time of the assault.  At some point during the day, appellant left
Robinson=s
trailer.  Appellant returned in the
afternoon with his mother, at her insistence, to pick up a radio he had lent
Robinson.  Appellant testified he felt
badly about taking the radio because Robinson was dying of AIDS.  Appellant returned to Robinson=s
trailer at around 11:00 p.m.

According
to Dawn Hernandez, appellant first approached her home and asked for money to
buy beer.  Hernandez refused appellant=s
request.  Appellant told Hernandez he was
going to go see Robinson.  Hernandez
responded that Robinson was asleep.  At
trial, appellant did not recall speaking with Hernandez and testified that he
went directly to Robinson=s trailer.

The
sequence of events at the trailer is hotly disputed.  Wilson testified he and Robinson were asleep
when appellant was observed reaching into the trailer through a window.  Wilson heard a noise and, believing appellant
was attempting to set the trailer on fire, exited the trailer and met appellant.  After yelling at Wilson, appellant struck him
in the face.  Appellant used his legs to
pin Wilson=s head to the ground and began to cut his head with a sharp
object.  While on the ground, Wilson
grabbed a metal object nearby and struck appellant.  Eventually, Kevin Harding, who is homeless,
arrived and broke up the fight. Wilson testified Harding wielded a pipe or
log.  Harding helped Wilson escape from
appellant and seek medical attention. 
Wilson is blind in one eye as a result of the attack.  The hospital later determined Wilson=s
blood-alcohol content to be .262. 

Appellant
testified he stood on the side of the trailer opposite the door, tapping on a
window close to where Robinson usually slept. 
He stated that, after hearing the trailer door slam shut, he walked
around the trailer and was attacked by the complainant with a metal burner from
a stove.  In self-defense, appellant cut
Wilson with a sheet-rock cutter he carried for work.  Appellant escaped to a nearby store, where he
used a pay phone to call his mother, who came and picked him up.  Appellant did not go to the hospital after
the fight, nor did he call the police.








Kevin
Harding did not testify at trial. 
Appellant=s trial counsel had filed a motion for continuance at a prior
trial setting based on the failure to locate Harding.  In the motion, defense counsel stated Harding
would testify as follows:

[O]n
the date of the alleged offense he was staying at [Hernandez=s
home] and that Blaine Robinson and complainant, Andrew Wilson, were staying in the
trailer house parked in the back yard . . . . 
[T]hat during the day of the alleged assault complainant was
drinking.  He would testify that early in
the evening he had a conversation with complainant at the trailer and
complainant started yelling at him from inside the trailer.  He would testify that complainant told him,
Kevin Harding, during the exchange that if Defendant came back to the trailer
again he was going to fight Defendant.

Witness
would further testify that later in the same evening on approaching the trailer
he saw complainant and Defendant fighting and while breaking the fight up
Defendant told witness that complainant had hit him first with some type of
object . . . .  He would testify that
complainant always drank very heavily and appeared to be intoxicated at the
time of this fight.

 

The trial
court granted the motion.  Though Harding
was also unavailable for trial several months later, a second continuance was
not requested.  Harding was eventually
located and testified at the hearing on 
appellant=s motion for new trial. 
At the hearing, Harding stated Wilson told him he would Ado
a Coffield@ on appellant if he came back to the trailer on April 7th.  Harding stated he was sleeping in the
Hernandez home at the front of the property when he was awakened around
midnight by the sound of a struggle in the backyard.  Harding arrived too late to see the beginning
of the fight, but did see that appellant was injured.  Harding saw blood and a dent on the stove
burner Wilson allegedly used to strike appellant.

I.  Hearsay Objection

Blaine
Robinson died before trial.  Appellant
argues admission of the following testimony by Wilson constitutes reversible
error:

State:  Why that night did B
were you asked to spend the night [in Robinson=s
trailer] on April 8th?

Wilson:  Yes. 
Blaine had asked me to spend the night in his trailer.

Defense:  Objection. 
That would be hearsay.








State:  It=s
not being offered for the truth of the matter asserted.

Court:  Overruled.

State:  Why did he ask you to spend the night?

Wilson:  He told me he was scared of Chad, the way
Chad had come over there violent and came back with his mom.  He told me he was scared of Chad.  He didn=t
want to stay in the trailer by himself.

Defense:  Objection.

Court:  Sustained.

Defense:  A further answer would be hearsay.

 

We
agree with the State that Wilson=s answer to the first question C AYes, Blaine had asked me to spend the night in the trailer.@
C
is not hearsay because it was not offered for the truth of the matter
asserted.  Tex. R. Evid. 801(d).  AMatter
asserted@
includes any matter explicitly asserted, and any matter implied by a statement,
if the probative value of the statement as offered flows from the declarant=s
belief as to the matter.  Tex. R. Evid. 801(c).  Wilson=s answer, that he was asked to spend the night by Robinson,
without more, is plainly immaterial to the prosecution of the crime charged.  As such, we conclude the State did not offer
the statement to prove the matter asserted and the trial court=s
admission of it was not error.  








Wilson=s
response to the second question, regarding why he had been asked to
sleep over, by contrast, was offered for the truth of the matter asserted and
is hearsay.  See Id.  However, the trial court sustained appellant=s
objection to this response.  Where a
trial court sustains an objection to inadmissible evidence in a trial to the
bench, no error is presented.[1]  See, e.g., Young v. State, 994 S.W.2d
387, 389 (Tex. App.CHouston [14th Dist.] 1999, no pet.) (where evidence admissible against one
co-defendant but not against the other, trial court presumed to follow
applicable law) (distinguishing Gipson v. State, 844 S.W.2d
738, 741 (Tex. Crim.
App. 1992)). 
We overrule appellant=s first issue.

II.  Motion for New Trial

Appellant
contends the trial court abused its discretion when it denied his motion for
new trial based upon newly discovered evidence because Kevin Harding, a key
defense witness, was absent at appellant=s trial.  Salazar v.
State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001) (trial
court's ruling denying a motion for new trial is reviewed for abuse of
discretion).  We disagree.

Texas
law provides that a new trial shall be granted where material evidence
favorable to the accused is discovered after trial.  Tex.
Crim. Proc. Code Ann. Art. 40.001 (Vernon Supp. 2002).  The Court of Criminal Appeals has recently
held that the legislature=s adoption of section 40.001 did not change the pre-existing
four-part test for determining whether newly discovered evidence dictates a new
trial should be granted.  Keeter v.
State, 2002 Tex. Crim. App. LEXIS 96, at *15 (Tex. Crim. App.
May 1, 2002).  A new trial is appropriate
only if: (1) the newly discovered evidence was unknown or unavailable to the
movant at the time of his trial; (2) the movant=s failure to discover or obtain the evidence was not due to a
lack of diligence; (3) the new evidence is admissible and is not merely
cumulative, corroborative, collateral, or impeaching; and (4) the new
evidence is probably true and will probably bring about a different result on
another trial.  Id. (citing Ayers
v. State, 606 S.W.2d 936, 941 (Tex. Crim. App. 1980)).








Appellant
fails to meet the fourth element required to obtain a new trial under Keeter.
Harding=s
testimony conflicted with Wilson=s trial testimony.[2]  The probity of the new evidence depends upon
Harding=s
credibility.  Where, as here, the same
judge presided over the trial and the hearing on appellant=s
motion, we may presume the judge, having heard both Wilson=s
and Harding=s testimony, determined Harding=s testimony would probably not have altered the outcome at
trial.[3]  Williams v. State, 504 S.W.2d 477, 483
(Tex. Crim. App. 1974).  Appellant=s
third issue is therefore overruled.

III. 
Ineffectiveness

A.  Waiver

The state first argues that by failing to provide separate
authority for his state and federal claims, appellant waives his state
constitutional claims.  See generally
Heitman v. State, 815 S.W.2d 681, 690 n. 23 (Tex. Crim. App. 1991) (citing
McCambridge v. State, 712 S.W.2d 499, 501B02 n.9 (Tex. Crim. App. 1986).  The decision to deem a multifarious point of
error waived has always been discretionary. 
See, e.g., Hicks v. State, 815 S.W.2d 299, 301 (Tex. App.CHouston [1st Dist.] 1991, no
pet.).  The federal and Texas
constitutions are not different in any relevant sense as applied to this
case.  Hernandez v. State, 726
S.W.2d 53, 56-57 (Tex. Crim. App. 1986). 
We decline to deem appellant=s ineffectiveness claims under the
Texas Constitution waived.

B.  Standard of Review

Texas courts apply the Strickland test to determine
whether counsel=s representation was so inadequate as to violate a
defendant's Sixth Amendment right to counsel. 
Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  See generally Strickland v. Washington,
466 U.S. 668, 687 (1984).  The defendant
must first show by a preponderance of the evidence that counsel=s performance was deficient, i.e.,
that his assistance fell below an objective standard of reasonableness.  Thompson, 9 S.W.3d at 812.  Next the defendant must show a reasonable
probability that, but for counsel=s unprofessional errors, the result
of the proceeding would have been different. 
Id.  A reasonable
probability is a probability sufficient to undermine confidence in the
outcome.  Id.  








Any allegation of ineffectiveness must be firmly founded in
the record, and the record must affirmatively demonstrate the alleged
ineffectiveness.  McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996). 
When reviewing a claim of ineffective assistance, a court must indulge a
strong presumption that counsel=s conduct falls within the wide range of reasonable
professional assistance; that is, the defendant must overcome the presumption
that, under the circumstances, the challenged action might be considered sound
trial strategy.  Strickland, 466
U.S. at 689.

C.  Ineffectiveness at
Guilt-Innocence Phase B Issue Three

Appellant submits his trial counsel was ineffective in
failing to secure the testimony of Kevin Harding at trial.[4]  The failure to call a witness may support an
ineffective assistance of counsel claim only if it is shown the witness was
available and the defendant would have benefitted from the testimony.  King v. State, 649 S.W.2d 42, 44 (Tex.
Crim. App. 1983).  The State concedes,
and we agree, that Harding=s testimony would have benefitted appellant.  Harding=s recitation of Wilson=s threat to Ado a Coffield@ on appellant corroborates appellant=s contention that Wilson was the
aggressor in the fight.  Tate v. State,
981 S.W.2d 189, 193 (Tex. Crim. App. 1998). 
Similarly, Harding=s recollection that the stove burner from Robinson=s trailer was dented and bloody is
some evidence, though perhaps weak, that Wilson brought the burner out of the
trailer expecting to fight.

However, the evidence in the record indicates Harding was
unavailable to testify during appellant=s trial.  Harding testified at the hearing on the
motion for new trial that he lived on the streets and was difficult to
locate.  In an affidavit attached to
appellant=s motion for new trial, appellant=s trial counsel stated:

For the first trial setting of October 30, 2000, Mr. Harding
was subpoenaed by personal service request issued by the State . . .  When he did not appear, both parties joined
in a request for a Writ of Attachment which was granted. . . .








I subpoenaed Mr. Harding requesting personal service
for the trial date of January 4, 2001. 
Knowing that Mr. Harding was in Houston and had been seen from time to
time, I retained a private investigator, Mr. John Thorne, to locate and serve
Mr. Harding.  Mr. Thorne returned the
subpoena to me designating service on Mr. Harding on December 29, 2000.  I learned on January 3rd that he had
mistakenly served the wrong person and that Mr. Harding had not in fact been
served and Mr. Harding did not appear the following day for the trial.  The history of most witnesses to this trial
was one of people struggling with addictions and lives lived [sic] in a
transient state without steady residence or employment.

By the time I learned that the investigator had served
the wrong person and given the prior 
history of the attempts by both parties to secure Mr. Harding=s presence, I felt it was too late to locate and
request him for trial and we went forward without a crucial witness for Mr.
Calvert=s assertion of self-defense.

 

Based on trial counsel=s affidavit describing his effort to find Harding, we hold
his performance was not objectively unreasonable despite his ultimate failure
to procure the presence of Harding at trial. Thompson, 9 S.W.3d at 812
(first prong of Strickland). But cf. Butler v. State, 716 S.W.2d
48, 56 (Tex. Crim. App. 1986) (holding counsel ineffective in making no effort
at all to investigate possible alibi witness).[5]  We overrule appellant=s third issue.  Strickland, 446 U.S. at 687; King,
649 S.W.2d at 44.

D.  Ineffectiveness at
Sentencing B Issue Four

Appellant contends his trial counsel was ineffective at
sentencing because he failed to object to statements contained in the
pre-sentence investigation report which (1) were hearsay; (2) discussed the
manner in which the complainant=s mother had suffered as a result of the crime; and (3)
recommended punishment.








It is axiomatic that a lawyer is not ineffective for failing
to make frivolous objections.  Moore
v. State, 4 S.W.3d 269, 275 (Tex. App.CHouston [14th Dist.] 1999, no
pet.).  Hearsay, victim-impact
statements, and punishment recommendations are all admissible at sentencing.  See Tex.
Code Crim. Proc. Ann. Art. 42.12 ' 9(a) (Vernon Supp. 2002) (Aany other information relating to
defendant or the offense@ admissible); Williams v. State, 958 S.W.2d 844, 845‑46
(Tex. App.CHouston [14th Dist.] 1997, no pet.)
(hearsay admissible); Fryer v. State, 68 S.W.3d 628, 633 (Tex. Crim.
App. 2002) (punishment recommendation may be included in PSI).  

Appellant provides no authority for the proposition that
comments regarding sentencing and the suffering of a complainant=s mother are inadmissible.[6]  We find none. Rather, we observe that article
42.12 allows a defendant to contest only facts presented in a PSI.  Tex.
Code Crim. Proc. Ann. Art. 42.12 ' 9(e) (Vernon Supp. 2002).  The rules of evidence are generally
inapplicable to the contents of a PSI.  Fryer, 68 S.W.3d at 631.  Appellant=s
trial counsel=s performance at sentencing was not deficient.  Moore, 4 S.W.3d at 275.  We overrule appellant=s fourth issue.

Accordingly,
the judgment of the trial court is affirmed.

 

 

 

 

/s/        Eva
M. Guzman

Justice

 

 

Judgment rendered and Opinion filed June
20, 2002.

Panel consists of Justices Yates, Seymore,
and Guzman.

Do Not Publish C
Tex. R. App. P. 47.3(b).

 











[1]  To find error
under this circumstance would effectively create a presumption that a trial
court considers evidence it expressly excludes. 
Only if the objection had been overruled, would we determine whether the
error was harmless.  The Court of
Criminal Appeals has recently questioned whether the erroneous admission of
evidence resulting in non-constitutional error is presumptively disregarded in
a trial to the bench.  Ovalle v. State,
13 S.W.3d 774, 784 n.34 (Tex. Crim. App. 2000).





[2]  Because
appellant cannot meet the fourth element required under Keeter, we need
not determine whether appellant satisfied any of the other three elements.





[3]  For example,
because Harding did not see the beginning of the fight, Harding=s testimony may not have altered the outcome of the
trial. 





[4]  We do not
address appellant=s contention that his counsel was ineffective in
failing to object to the two hearsay statements of Blaine Robinson.  One statements was not hearsay while the
other was timely and successfully objected to by appellant=s counsel.





[5]  See also
Everage v. State, 893 S.W.2d 219, 222 (Tex. App.CHouston [1st Dist.] 1995, pet. ref=d) (counsel ineffective in sending defense witness
home and hoping the trial court would grant his motion for a recess). 





[6]  Cantu v.
State, 939 S.W.2d 627, 637 (Tex. Crim. App. 1997), relied upon by
appellant, is easily distinguished.  Cantu
addresses whether evidence of impact on persons other than the complainant
is proper when a jury considers the death penalty in a capital case.