NO. 07-00-0574-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 12, 2002

_____

MICHAEL LEE MONTGOMERY,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 230TH DISTRICT COURT OF HARRIS COUNTY;

NO. 845063; HON. BOB BURDETTE, PRESIDING

_____

Before QUINN and REAVIS, JJ., and BOYD, SJ.[1]

Appellant Michael Lee Montgomery was convicted of capital murder and sentenced to life imprisonment. In four points, he contends 1) he was denied effective assistance of counsel at trial, 2) the trial court abused its discretion in denying his motion for continuance, 3) he was denied effective assistance of counsel when his juvenile counsel failed to obtain a psychiatric and psychological examination of him, and 4) the evidence is legally and factually insufficient to sustain his conviction. We affirm the judgment.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. TEX. GOV.'T CODE ANN. §75.002(a)(1) (Vernon Supp. 2002).

**Background**

On the night of December 27, 1999, appellant, who was 14 years old, and his friends Juan Perez, Miguel Juarez, Miguel's brother Felipe Juarez, and Felipe's wife Marissa Juarez gathered at the home of Miguel and Felipe. Around 9:00 p.m., they left the residence to go cruising in two cars with Juan, Miguel, and appellant in the first car and Felipe and Marissa in the second car. Miguel carried a gun but gave it to appellant sometime during the drive. The occupants of the first car spotted another car they wished to car jack and told the driver Juan to follow it. The car was driven by Rosa Martinez. They followed Rosa into the parking lot of her apartment, and Miguel and appellant went to the driver's side of her car. Miguel tried to take the keys from her, and they struggled as she sat in the driver's seat. Appellant then shot Rosa, and the bullet entered through her shoulder and went into her chest. She was later pronounced dead at the hospital. Rosa was nine months pregnant at the time of her death.

**Issue One - Ineffective Assistance of Counsel**

In his first issue, appellant complains that he received ineffective assistance of counsel[2] 1) by action or inaction during voir dire, 2) by "opening" the door to prejudicial evidence, 3) by failing to present evidence, 4) by failing to participate in the selection of a trial setting, 5) by failing to present a defense and cross-examining in an ineffective manner, 6) by failing to file a motion in limine, and 7) by his opening and closing argument. The issue is overruled for various reasons.[3]

---

[2]Appellant was represented by three defense counsel at trial.

[3]Upon reading appellant's allegations, we discovered that they were mere conclusions lacking citation to legal authority. That is, he either failed to explain why the conduct he complained of was deficient (other than by simply concluding that it was) or he failed to provide us with citation to legal authority holding that like

2

Initially, we note that the standard by which we review ineffective assistance of counsel claims is well established. Therefore, we will not repeat it, but cite the parties to *Strickland v. Washington,* 466 U.S. 668, 687-95, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) for explanation of the same. Furthermore, claims of ineffective assistance must be firmly founded in the record. *Rios v. State,* 990 S.W.2d 382, 385 (Tex. App.—Amarillo 1999, no pet.).[4]

*Voir dire*

Appellant complains that his counsel was deficient during voir dire 1) in failing to challenge for cause a juror who identified himself as a person who attended law school with one of the prosecutors, 2) in failing to ask whether any jurors knew the prosecutor or had families in law enforcement, 3) in failing to make additional inquiries to "weed out possible bias," 4) in failing to object to an "improper hypothet" [sic] used by the prosecutor when he informed prospective jurors that life imprisonment was the only punishment available for a conviction of capital murder, 5) in failing to use his peremptory strikes in a "strategical" manner, 6) in failing to object to the court's comment on his failure to testify, 7) in failing to object to a misstatement of the law on accomplice witness testimony, and 8) in failing to object to a hypothetical posed by the State with respect to the use of a gun in a robbery. The record shows that the trial court asked the panel if anyone knew the attorneys representing the State of Texas and no hands were raised. Later, during the State's voir dire, one juror stated that he and the prosecutor had gone to law school

conduct was deficient. Given this, the allegations were not properly briefed. *See* TEX. R. APP. P. 38.1(h) (requiring citation to legal authority and argument supporting the contentions made).

[4]A motion for new trial was filed, but it was not based on any claims of ineffective assistance.

3

together.  The juror added, "I don't know you.  You are not a friend or associate, but in the interest of full disclosure, I wanted to be sure that that was out on the table."  When the prosecutor questioned him further as to whether that relationship would affect him as a juror in the case, he responded, "Absolutely not."  Therefore, the value of any additional questioning was  not  shown.  *See Bone v. State,* 77 S.W.3d 828, 834 n.15 (Tex. Crim. App. 2002) (finding no deficiency in performance when one prospective juror had an association with one of the prosecutors through Little League, and the panel was asked as a whole whether they knew the prosecutor well enough that it would keep them from giving a fair and honest verdict to which no response was received).

Appellant also complains that counsel failed to ask whether anyone had families in law enforcement and to attempt to weed out other possible bias because the only questions he asked of the jury were whether the members had previously been on a jury that assessed punishment or whether they had been the victim of a violent crime.   He further questions the failure of counsel to probe the jurors' beliefs arising from issues of rehabilitation and punishment, to object to an allegedly improper hypothetical in which the State told the jury that the only punishment for capital murder was life imprisonment, to question the jury as to their ability to give probation, and to ascertain their ability to find appellant guilty of some lesser offense.

The trial court questioned the jury as to 1) whether they had a dispute with the idea that merely because someone was arrested or charged for an offense, it is not evidence they committed an offense, 2) the fact they could only judge the credibility of a witness based on the quality of their testimony not on the basis they were a police officer or possessed some  specific characteristic, 3) the fact it is the State's burden to prove the

4

defendant guilty beyond a reasonable doubt, and 4) the fact the defendant is not required to testify. The court also questioned the jury as to their ability to assess the full range of punishment if appellant was found guilty of an offense other than capital murder. The State then asked the jury 1) whether they could find appellant guilty of capital murder knowing the sentence would be life imprisonment when appellant appeared to be a young person, 2) whether they could believe the testimony of someone else who may have had involvement in the crime, 3) as to the implications that might arise from the use of a firearm, 4) as to the intent that might arise from the part of the body where the victim was shot, 5) whether someone could make the decision to take a life, 6) about the law of accomplices, 7) about the right of appellant not to testify, 8) about their ability to sit in judgment of another person, 9) whether the primary purpose of a sentence was to punish or rehabilitate, and 10) about their ability to consider the range of punishment.

Thus, the topics which appellant claims his attorney failed to pursue had been previously covered by the court and the State. The court had also informed the jury that the only punishments for capital murder were death or life imprisonment and that the State was not asking for death. In *Williams v. State,* 970 S.W.2d 182, 184 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd), it was held that because the trial court had examined the jury extensively, counsel's failure to ask many questions could not be seen as anything other than trial strategy. Similarly, nothing in the record before us shows that counsel's voir dire was not the product of a reasonable trial strategy. *See Bone v. State,* 77 S.W.3d at 834.

Appellant additionally argues that a juror who, in response to his counsel's question about being the victim of a violent crime, stated that there had been a burglary in her home, was challengeable for cause and, therefore, counsel's performance was deficient

5

for failing to utter such a challenge. Yet, there was no showing that the juror was challengeable for cause because the response was given in her attempt to clarify what counsel meant by "violent" crime. Nor was there any showing that she could not be fair or unbiased.

Finally, appellant complains of his counsel's failure to object to 1) the trial court's reference to his failure to testify, 2) what "appears" to be a misstatement of the law regarding accomplice witness testimony, and 3) an "improper" hypothetical in which "the prosecutor made an attempt to equate that a gun in a robbery being used to hurt somebody and take property are the same acts." Appellant fails to explain or analyze in what manner each of the statements are improper or incorrect statements of the law. He simply concludes that they were. Nor does he cite any authority to support his contention. Consequently, the error was not preserved due to his inadequate briefing. *Aldrich v. State,* 928 S.W.2d 558, 559 n.1 (1996).

*Admission of Prejudicial Evidence*

Next, it is asserted that counsel was deficient in opening the door to evidence of extraneous offenses. The contested testimony follows:

Q. During the first - - and we are not sure of how many counts it was, I believe it's approximately 11 for Miguel Juarez - - indictments for theft or car jacking, whatever they were, was Michael Montgomery also arrested for those certain 11 counts, on those certain 11 counts?

A. Are you referring to the - - specifically to the spring of 1999 cases?

Q. That's correct?

A. No, sir, he was not.

Q. Was he a suspect at that time?

6

A.  No, sir, he was not.

That testimony allegedly resulted in the following supposed prejudicial testimony:

Q.  You've talked to Defense counsel about the spring of 1999 as far as the investigation.  Did you continue to investigate these individuals in the - - say the winter of 1999?

MR. PHILLIPS: Objection, Judge.  We just talked about improper redirect.

THE COURT: I assume when you say these individuals, you're referring to all four people that are on State's Exhibit 43?

MR. HAWKINS: Specifically talking about Miguel Juarez.

MR. PHILLIPS: Any testimony, Your Honor, I would object to as to Michael Montgomery during the investigation.

THE COURT: I want to hear the question first.

Q.  (BY MR. HAWKINS) Did you continue to investigate Miguel Juarez in the winter of 1999?

A.  I did.

Q.  And was additional information developed?

A.  It was.

Counsel objected to the admission of evidence as to his client, and there is no showing that any improper evidence as to his client was admitted.  The only evidence presented was that with respect to Miguel Juarez.

*Failure to Present Evidence*

Appellant asserts that his counsel failed to investigate evidence as to any psychiatric problems he might have because the State filed a motion for a psychiatric and psychological examination in his juvenile proceeding but no further actions were taken with respect to that motion.  There is no evidence in the record as to the extent, if any, of

7

counsel's investigation into his client's competency or sanity. It is possible that counsel investigated these topics on his own or with professional assistance without having pursued them through the court. In short, the record before us must show a want of investigation which it does not. Appellant merely surmises that misconduct occurred, as he did in most other instances.

*Motion for Continuance*

Next, on September 14, 2000, the court entered an order substituting counsel because appellant had retained counsel of his choice. On October 13, 2000, appellant filed a motion for continuance from the October 27, 2000 trial setting arguing he needed additional time to prepare for trial. The motion was denied on October 19, 2000.

Appellant complains that his substituted counsel failed to attend a court setting on September 1 and to participate in setting a date for trial at that time. However, trial counsel was not substituted until after the September 1 date. Therefore, appellant's substituted counsel cannot be said to have failed to meet his obligation to attend court dates. Further, appellant has made no showing that his counsel was unprepared at the time of trial.

Additionally, appellant states that his appointed counsel failed to participate in the plea bargaining process because the reset form of September 1, 2000, indicates "No Offers." This notation fails to establish that counsel did not participate. Instead, it could indicate the State was not willing to make any offers.

*Trial Performance - Failure to Present Defense and to Effectively Cross-Examine*

Appellant challenges his counsel's performance during trial by contending counsel failed to present a defense and cross-examined witnesses in an ineffective manner. The only example of allegedly ineffective cross-examination was in response to testimony from

8

a fingerprint examiner who testified she took prints from appellant and matched them with prints taken from the complainant's car. The gist of counsel's cross-examination was that there were certain prints found at the scene that were unidentifiable which appellant contends only suggested to the jurors that he was guilty. However, this evidence could also suggest that there were prints at the scene which belonged to someone else who had possibly done the shooting. In other words, counsel's cross-examination could have emanated from reasonable trial strategy.

Appellant further complains that his counsel failed to object to the question posed to Marissa as to whether anyone in the car had a gun because it was "leading and highly prejudicial." Appellant additionally claims his counsel should have objected to testimony from Marissa that he told her he had to shoot the victim. This testimony allegedly was objectionable because it constituted hearsay. Yet, we cannot fault counsel for not objecting to admissible evidence. *Moore v. State,* 4 S.W.3d 269, 275 (Tex. App.—Houston [1st Dist.] 1999, no pet.). Moreover, appellant has not shown that the statement he allegedly made to Marissa about shooting the complainant was not admissible as an admission by a party-opponent under Rule of Evidence 801(e)(2). See *Peoples v. State,* 928 S.W.2d 112, 117-18 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that testimony from the defendant's co-worker that he had told her he wanted his wife dead was not inadmissible hearsay but was an admission by a party-opponent). Additionally, and assuming the evidence was improper, isolated failures to object to improper evidence do not necessarily constitute ineffective assistance. *Manley v. State,* 28 S.W.3d 170, 174 (Tex. App.—Texarkana 2000, pet. ref'd); *Moore v. State,* 4 S.W.3d at 275. Finally, nothing

in the record indicates the reasoning behind counsel's failure to object, and therefore appellant has not overcome the presumption that his counsel acted reasonably. *See Tong v. State,* 25 S.W.3d 707, 714 (Tex. Crim. App. 2000), *cert. denied,* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001); *Jackson v. State,* 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

## *Failure to File Motion in Limine*

It is appellant's contention that his counsel's performance was deficient because he failed to file a motion in limine with respect to testimony that the complainant was pregnant. During trial, counsel objected when the State questioned a witness as to whether he had known the complainant to be pregnant. Then, in a discussion at the bench, the trial court indicated that the parties had reached an agreement on that issue in chambers the day before but that the prosecutor who posed the question had not been present at that meeting. After the prosecutor agreed not to mention what happened to the baby but asserted his entitlement to refer to the complainant's pregnancy, counsel objected that the testimony would be prejudicial. The court overruled that objection. Appellant contends his counsel should have objected every time the complainant's pregnancy was mentioned and he failed to make an offer of proof as to what the agreement between the parties had been. However, the record does not reveal counsel's reasoning or strategy, and we can therefore not assume counsel's actions were not based on reasonable trial strategy.

Nor did appellant cite to any legal authority illustrating that the testimony was inadmissible or otherwise provide us with any explanation or analysis on the subject.

Again, he merely concluded that it was inadmissible. Thus, he again failed to adequately brief the point.

*Opening and Closing Arguments*

Finally, appellant challenges his counsel's statement during opening argument that he would not contest the fact that appellant was present at the scene of the crime. He also complains that, in his closing, counsel stated that appellant was guilty.

Counsel established in opening that appellant's defense was that, although appellant was present, the evidence would show that Miguel Juarez was the perpetrator and that the gun accidentally discharged. In closing, the relevant portion of the argument is as follows:

> . . . We represent a lot of guilty people. We do. In fact, today, Michael Montgomery is guilty. Oh no. He's not guilty of capital murder. Question was as to whether or not he's even guilty of felony murder. Is he guilty of making wrong choices and friends? Is he guilty of being in the wrong place at the wrong time? Yes. Yes. But that's not what he's charged with. He's charged with capital murder. And for that, he is innocent. And I ask that you return that verdict of innocent. . . .

This passage hardly supports the suggestion that counsel admitted appellant's guilt for the crime charged. Instead, appellant utterly misconstrues what counsel said. What counsel urged was not that his client was guilty of capital murder but of bad judgment and of being a victim of misadventure. And, while we do not address the persuasiveness of the argument, we nonetheless see a reasonable trial strategy underlying it. In short, appellant does that which we cautioned against in *Beck v. State*, 976 S.W.2d 265, 268 (Tex. App.—Amarillo 1998, pet. ref'd). Asserting claims of ineffectiveness is nothing short of accusing one's prior counsel of malpractice. *Id.* Such baseless accusations, like those here, can have far reaching effect. Thus, it is a tact which should be indulged only after

11

thorough contemplation and analysis. And, that is especially so when the victim of the attack is denied opportunity to explain him or herself, as was the situation here.

### Issue Two - Denial of Motion for Continuance

In his second issue, appellant argues that the trial court abused its discretion in failing to grant his motion for continuance of the trial. He asserts that his counsel's inadequate performance was due to his lack of preparation time. Specifically, he notes that his counsel did not agree to a trial setting in the matter. We overrule the issue.

The granting or denial of a motion for continuance lies within the discretion of the trial court. *Heiselbetz v. State,* 906 S.W.2d 500, 511 (Tex. Crim. App. 1995). To find an abuse of that discretion in the denial of a continuance, there must be a showing that counsel was prejudiced by his counsel's inadequate preparation time. The bare assertion that counsel did not have adequate time does not alone establish prejudice; there must be a showing of specific prejudice to his defense. *Id.* at 513. We have already determined that appellant failed to show that his counsel's performance was inadequate during trial.

Further, trial counsel did allege in his motion for continuance that the case was "more complex than what Counsel was led to believe based on the information that was provided by the family" and that he had not had time to look at evidence the State intended to introduce of other crimes allegedly committed by appellant. Yet, there is nothing specifically mentioned by appellant or shown in the record suggesting that counsel's performance was negatively affected by lack of preparation time.

12

**Issue Three - Failure to Obtain a Psychiatric Exam**

In his third issue, appellant complains of having received inadequate representation by his counsel during the juvenile proceeding as a result of the failure of his counsel to obtain a complete psychiatric and psychological examination to which he was entitled under the Family Code.

The record shows that the State filed a motion seeking to have psychiatric and psychological examinations performed on appellant including an examination for "competency and fitness to proceed." The court had ordered a diagnostic study, social evaluation, and full investigation of appellant, his circumstances and the circumstances of the alleged offense to be performed which is required prior to a waiver of original jurisdiction by the juvenile court. *See* TEX. FAM. CODE ANN. §54.02 (Vernon 2002). That report indicates that psychiatric and psychological examinations were not performed at the request of appellant's counsel. A letter from appellant's counsel requesting that no such testing be conducted was also attached to the report. Thus, it appears that counsel considered the situation and made an affirmative decision to forego testing. He may well have had a legitimate reason for deciding as he did. Indeed, the decision could have been made to prevent appellant from having an opportunity to make incriminating statements or to add fodder to the State's argument that appellant had the mental faculty of an adult. Yet, we are left to simply guess about those reasons. And, most importantly, counsel was not afforded an opportunity to explain them. So, the record does not show on its face that the decision of counsel was something other than reasonable trial strategy. *Tong v. State, supra; Jackson v. State*, *supra*.

13

**Issue Four - Legal and Factual Sufficiency of the Evidence**

Appellant argues in his fourth issue that the evidence is both legally and factually insufficient to support a finding that he shot the complainant or that he intended to steal her vehicle. We overrule the point.

The standards by which we review challenges to the sufficiency of the evidence are well settled, and we refer the parties to *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *King v. State,* 29 S.W.3d 556, 562-63 (Tex. Crim. App. 2000), and *Clewis v. State,* 922 S.W.2d 126, 129 (Tex. Crim. App. 1996), for explanations of the same.

Next, the substance of appellant's complaint is that the testimony of the accomplices and the fingerprint evidence is conflicting. The fingerprint evidence showed appellant's right palm print on the outside of the driver's window with his right thumb print on the inside. There was also testimony that it would take 14 pounds of pressure to pull the trigger on the gun used to commit the offense. Although Marissa testified that appellant had both hands on the gun when he shot Rosa, she did not state that appellant placed his hands on the vehicle. Thus, appellant argues that the evidence is legally and factually insufficient to show that he held onto the window while pulling the trigger. Marissa also stated that nothing was taken from the car and the car itself was not taken. Therefore, appellant contends, that evidence does not support a finding that he intended to steal the vehicle.

The indictment charged that appellant "unlawfully, while in the course of committing and attempting to commit the Robbery of Rosa Martinez, . . . intentionally cause[d] the

14

death of the Complainant by shooting the Complainant with a deadly weapon, namely a firearm." There was evidence presented at trial illustrating that appellant and his friends decided to go "jacking" and they followed Rosa's car to "jack" it. And, according to both Juan and Marissa, appellant shot the complainant while Miguel was trying to get the vehicle from Rosa. This evidence, if believed, was and is sufficient to allow a rational trier of fact to find beyond a reasonable doubt that appellant shot the complainant while attempting to steal her car, and the proof to support that finding is not so weak as to undermine confidence in the jury's verdict. Any conflicts between that evidence and other evidence presented at trial were for the jury to resolve. *Moody v. State,* 830 S.W.2d 698, 700 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Justice


Do not publish.