**Alandus WEAVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–273–CR.**

Court of Appeals of Texas,
Waco.

Sept. 15, 1999.

Kelly R. Myers, Corsicana, for appellant.

Patrick C. Batchelor, Navarro County District Attorney, Lyndon Laird, Assistant District Attorney, Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

Was the defendant's trial counsel ineffective? This was the sole question before the trial court at a motion for new trial. The burden rests upon the appellant to rebut the presumption that counsel was effective. Because that presumption was not overcome at the hearing, the trial court did not abuse its discretion in denying the motion for new trial. Thus, we will affirm the judgment of the trial court.

## BACKGROUND

Alandus Weaver was charged with theft by intentionally appropriating current money of the United States of America and Food Stamp benefits with a value of over $1,500 but less than $20,000. Central to his case was the issue of whether Weaver was actually living with a woman, con-

trary to his application for welfare benefits wherein he stated that the only persons living in his home were himself and two children. A jury found Weaver guilty of theft of over $1,500 and under $20,000. He was sentenced to serve two years in prison, a fine of $750.00, and to pay $2,900 in restitution. Rather than serve the prison time, Weaver was put on five years community supervision and sentenced to serve only 120 days in prison. Weaver filed a motion for new trial on the basis of ineffective assistance of counsel. After a full evidentiary hearing, the trial court overruled the motion.

## APPEAL

Weaver appeals the denial of his motion for new trial. He asserts that the trial court erred in denying his motion for new trial because his trial counsel's performance was deficient. He argues that the deficient performance of trial counsel prejudiced his defense, and that there is a reasonable probability that the result would have been different without these errors. Weaver argues that his trial counsel was deficient in several ways. First, he alleges that trial counsel was deficient because he filed pre-trial discovery, but failed to request a hearing or get a ruling on any of the motions filed.

Additionally, Weaver argues that counsel was ineffective because he failed to make an independent investigation of the facts of the case or to interview potential witnesses. According to Weaver, he gave his attorney several names of friends who could testify that he was not living with a woman at the time he was receiving welfare, but his attorney failed to contact or call to trial any of these potential witnesses. He also asserts that the prosecution gave his attorney a list of 10–12 names of witnesses, but his attorney only contacted three or four of the persons on this list.

Finally, Weaver argues that counsel was ineffective because he failed to strike pro-

spective jury members he could reasonably have known would be prejudiced against him. Weaver asserts that the jury consisted of twelve members, three of whom were prejudiced against him or his defense. According to his brief, the Chief of Police of Rice, the father or father-in-law of an assistant district attorney, and the cousin of the bailiff were sitting on the jury panel. Weaver argues that because his attorney did not ask any questions directly concerning panel members' involvement with law enforcement, and because he used only six of his ten available peremptory strikes, he was denied an impartial jury.

## MOTION FOR NEW TRIAL

*Standard of Review*

■■■■ Ineffective assistance of counsel may be raised in a motion for new trial. *State v. Gonzalez,* 855 S.W.2d 692, 694 (Tex.Crim.App.1993); *Reyes v. State,* 849 S.W.2d 812, 815 (Tex.Crim.App.1993). Because the decision on a motion for new trial rests within the sound discretion of the trial court, the standard of review on appeal is whether the trial court abused its discretion. In the absence of an abuse of discretion, appellate courts are not justified in reversing the judgment. *Gonzalez,* 855 S.W.2d at 696; *Appleman v. State,* 531 S.W.2d 806, 810 (Tex.Crim.App.1975); *Hill v. State,* 480 S.W.2d 670, 673 (Tex.Crim. App.1972). In considering a motion for new trial, the trial court possesses broad discretion in assessing the credibility of witnesses and in weighing the evidence to determine whether a different result would occur upon retrial. *Messer v. State,* 757 S.W.2d 820, 827–828 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

*Test for Ineffective Assistance of Counsel*

■■■■ The proper standard to decide claims of ineffective assistance of counsel under the Sixth Amendment is the test adopted by the Supreme Court in *Strick-*

land v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim. App.1986). The *Strickland* court adopted a two-pronged analysis for claims of ineffective assistance under which the defendant must show that (1) counsel's performance was deficient, to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment; and (2) counsel's deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App.1984). An appellant is required to prove that counsel's representation fell below an objective standard of reasonableness based upon prevailing norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *McFarland v. State,* 845 S.W.2d 824, 842 (Tex.Crim.App.1992), *cert. denied,* 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). A reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the proceedings. *Miniel v. State,* 831 S.W.2d 310 (Tex.Crim.App.), *cert. denied,* 506 U.S. 885, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). This two-pronged test is the "benchmark for judging ... whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *McFarland,* 845 S.W.2d at 842–845.

■ This standard has never been interpreted to mean that the accused is entitled to perfect or errorless counsel. *Id.* at 843; *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986). Generally, isolated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination. *McFarland,* 845 S.W.2d at 843.

■ In establishing ineffective assistance of counsel, the burden is on the defendant and it must be proved by a preponderance of the evidence. *Cannon v. State,* 668 S.W.2d 401, 403 (Tex.Crim.App. 1984); *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). Further, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Chambers v. State,* 903 S.W.2d 21, 32 (Tex. Crim.App.1995). The defendant must overcome the presumptions that counsel was effective and that the challenged action or omission "might be considered sound trial strategy." *Id.* (quoting *Strickland).* We are hesitant to second-guess an action of the attorney that might have been valid trial strategy at the time. We do not view trial counsel's performance with hindsight. *See Delrio v. State,* 840 S.W.2d 443, 445 (Tex.Crim.App.1992). Allegations of ineffective assistance of counsel will be sustained only if they are firmly founded. The fact that another attorney might have pursued a different course of action or tried the case differently will not support a finding of ineffective assistance of counsel. *Owens v. State,* 916 S.W.2d 713, 717 (Tex.App.—Waco 1996, no pet.).

*Facts at the Hearing*

Under the Texas Rules of Appellate Procedure, rule 33.1(a), in presenting a complaint for appellate review, it is a prerequisite that the record must show (1) a timely request, objection, or motion was made to the trial court stating the grounds for the complaint and (2) a ruling on the request, objection or motion or a refusal to rule coupled with an objection to such refusal. TEX.R.APP. P. Rule 33.1(a). The appellate courts of Texas, our own court included, have noted the inherent difficulty in bringing ineffective assistance of counsel claims where the record is often silent as to the very issues of concern. In most instances, the record on direct appeal is inadequate to develop an ineffective assis-

tance claim. *Gonzalez v. State*, 994 S.W.2d 369, 372 (Tex.App.—Waco 1999, no pet.). *See also Jackson v. State*, 877 S.W.2d 768, 772–773 (Tex.Crim.App.1994) (Baird, J. concurring); *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex.Crim.App.1992) (Benavides, J. dissenting). Weaver filed a motion for new trial in order to present his claim for review. The motion concerning the effectiveness of his trial counsel was heard by the trial court and the record of the hearing is properly before us. Thus, we are able to review a well developed record of Weaver's complaint.

At the motion for new trial, Weaver called two personal witnesses and his trial counsel.

Tina Cooks stated that she knew Alandus Weaver and that he was not living with a woman while receiving welfare benefits. She testified that she did not know Weaver's attorney by sight, but that she had spoken with his attorney at the courthouse for thirty minutes prior to giving her testimony. She also stated that she actually testified favorably for Weaver at trial.

Elaine Lewis also testified at the hearing. It was her testimony that she did not speak with Weaver's attorney before trial, but that she did testify favorably for Weaver whom she had known for more than sixteen years.

William L. Smith, trial counsel to Weaver, testified at the motion for new trial. It was his testimony that he did not remember all the details of the case because it had been over two months since the trial. He testified that he filed four or five pretrial motions but did not have any of them set for hearing because he had a co-operative relationship with the District Attorney's Office.

According to Smith's testimony, the District Attorney's Office gave him a witness list composed of twelve to fifteen names.

He went down the list and determined that there were three or four witnesses whom he thought would be considered credible by the jury. He contacted these witnesses and investigated the possible testimony to be given by them. The other witnesses on the district attorney's list, in his legal opinion, were not witnesses that he was worried about.

Smith also testified that Weaver gave him numerous names of people who could state that Weaver was not living with a woman while receiving public assistance. He telephoned some of the people Weaver recommended and several of them testified at trial. He did not call everyone Weaver wanted him to call because the testimony would have been redundant and several of the witnesses were determined by Smith to have credibility issues.

Smith also testified that he did not make an independent investigation into the welfare status of Weaver at various occasions, including Weaver's status at the time of indictment. According to his testimony, he was given several lists of benefits given to Weaver and checks cashed by Weaver. He questioned some of the items listed and the list was thereby reduced in the amount of a thousand dollars.

Smith also testified that a plea bargain was offered by the District Attorney's Office. It was his opinion that the offer was very good. The offer consisted of restitution of the benefits received, a $500 fine, probation, and that Weaver could get deferred adjudication. He conveyed the offer to Weaver and repeatedly urged him to take the offer. Weaver rejected the offer because he did not want a felony record. Smith stated that he tried to explain that deferred adjudication would allow him to have no record, but that Weaver would not take the offer.

Smith was questioned in depth about the jury selection process. He testified that Weaver was extensively involved in the

jury selection. While only six of ten available challenges were used, Weaver completely agreed with the final selection. When asked about members of the jury who were involved in law enforcement, Smith was not aware that any of the jury members were members of law enforcement. Smith admitted that he would have had no trial strategy to include a chief of police of a nearby town on the jury. However, the evidence does not establish that such a person was on the jury. While the question was raised whether a chief of police sat on the jury, there is nothing in the reporter's record of voir dire, nor of the clerk's record, nor the motion for new trial which firmly establishes that such was the case. The same is true of the allegations that a father or father-in-law of the district attorney sat on the panel and that the bailiff's cousin sat on the panel.[1]

Smith does not remember whether juror cards were used nor does he remember asking whether anyone was involved with law enforcement. While such questions are common in criminal trials, our reading of the record shows that the questions asked by both the prosecution and the defense reveal that each was concerned with various prejudices possible in this case including issues of welfare, welfare fraud, and jurors' personal feelings about Weaver as an individual. Both attorneys asked repeatedly whether anyone felt that he or she could not apply the law as written. The record allows the conclusion that panel members who had prejudices or strong feelings were removed.

Smith testified that Weaver sat with him during voir dire, that Weaver approved every strike used, and that Weaver did not express the need to strike anyone else. Smith testified that he did not deliberately leave anyone on the panel who would be detrimental to his client and that he used his best judgment as an attorney with twenty-five years of experience while picking the jury.

The record does not show how the next three panel members not chosen and not struck by the prosecution would have been "better" for Weaver to have on his jury than the three he argues should have been stricken. Nor does the record show how the three he wanted struck affected the determination of guilt.

## APPLICATION OF FACTS TO LAW

Weaver was required to prove that counsel's representation fell below an objective standard of reasonableness based upon prevailing norms and that there is a reasonable probability that, but for his counsel's errors, the result of the proceeding would have been different. *McFarland*, 845 S.W.2d at 842. In order to establish ineffective assistance of counsel, the burden is on Weaver to prove by a preponderance of the evidence that counsel was ineffective. *Cannon*, 668 S.W.2d at 403; *Moore*, 694 S.W.2d at 531. Weaver must overcome the presumption that counsel was effective. *Chambers*, 903 S.W.2d at 32.

■ An extensive search of the record shows that Smith did not call all the witnesses suggested by Weaver, but that his failure to do so was because he deemed such witness' testimony as repetitive. Smith did not interview each potential witness listed by the district attorney, but only those witnesses he deemed credible within the community. Weaver did not establish that the witnesses listed by the district attorney who were not investigated were detrimental to his case and that an investigation would have changed the out-

---

1. We do not consider whether such facts would rise to the level required for ineffective assistance of counsel nor on whether such persons can be deemed per se prejudicial to a defendant. The record does not affirmatively establish the status asserted in Weaver's brief and we will not read more into the record than it actually contains.

come of his trial. Further, he did not establish that those not investigated were ever called to testify.

■ While Smith did not set any of his motions for hearing and did not get a ruling on them, his testimony is un-controverted that he obtained all the information sought through a co-operative relationship with the District Attorney's Office. There is no indication that any new or helpful information would have been acquired by having a hearing set or that this decision in any way limited or impeded Weaver's defense.

■ The jury selection process was heavily scrutinized at the hearing on the motion for new trial. The accusations that certain members of the panel were prejudiced against Weaver's case is not substantiated by the record. Weaver was involved in the selection process and approved the final selection. Though his attorney did not ask every possible routine question, his questions were calculated and aimed at potential juror's prejudices and opinions concerning the law and their ability to apply the law as written.

We cannot say that counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *McFarland*, 845 S.W.2d at 842–845. Weaver has not established facts which would overcome the strong presumption that counsel's assistance was effective. Viewing the circumstances as a whole, Weaver fails to meet the required analysis of the *Strickland* test in any of the above arguments. Weaver's point is overruled.

## CONCLUSION

The trial court has authority to grant a motion for new trial based upon ineffective assistance of counsel. The trial court heard the testimony concerning Weaver's attorney and his assistance at trial and determined that the presumption of counsel's effectiveness had not been overcome. The trial court used its discretion and an abuse of that discretion has not been shown. That decision will not be disturbed on appeal.