IN THE COURT OF CRIMINAL APPEALS


OF TEXAS





NO. 678-02






THE STATE OF TEXAS



v.



KENRICK TREMAINE JONES a.k.a


KENRICK T. JONES, Appellant





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


TARRANT COUNTY






 Hervey, J., delivered the opinion of the Court in which Keller, PJ., Meyers,
Keasler and Cochran, JJ., joined. Price, J., filed a concurring opinion, in which Johnson and
Holcomb, JJ., joined. Womack, J., concurred in the result.


O P I N I O N 


 On November 9, 2001, a jury convicted appellant of aggravated robbery with a deadly weapon. 
The court sentenced appellant to ten years imprisonment. On December 11, 2001, appellant's counsel
on appeal filed a motion for new trial alleging that trial counsel was ineffective. After conducting a hearing,
the trial court denied the motion. 

 On appeal, the court found that appellant established both prongs of the Strickland test for
ineffective assistance of counsel. Jones v. State, No. 2-00-477-CR, slip op. at 29 (Tex. App.--Fort
Worth Mar. 28, 2002, pet. granted)(not designated for publication). Specifically, the court held that trial
counsel's failure to move for a continuance to secure the presence of certain alibi witnesses at trial fell
below an objective standard of reasonableness and, but for the error, the result of the proceeding would
have been different. Id. at 26, 28. The court concluded that appellant "satisfied the Strickland test, and
the trial court abused its discretion by denying his motion for new trial." Id. at 29. Accordingly, the court
reversed and remanded the case for a new trial. In its petition for discretionary review, the State contends
that the court of appeals erred by reviewing the testimony at the hearing on the motion for new trial de novo
and then basing its decision on a determination that trial counsel's strategy was unsuccessful, not on whether
it was valid. We granted review to determine the applicable standard of review in assessing claims of
ineffective assistance of counsel raised by a motion for new trial.

 On the evening of October 31, 1999, two individuals robbed Michael Brooks, a pizza delivery
person, at gunpoint, taking his wallet. The wallet contained a debit card and numerous credit cards. The
following day appellant and three others went to a Just for Feet store and used one of Brooks' credit cards
to purchase approximately five hundred dollars in merchandise. On November 18, Detective Robert
Abbott went to Brooks' place of business and showed him six photographs of individuals with similar
features. Brooks selected appellant's photograph and said "this is one of the men that robbed me." 
Appellant was arrested the next day. Appellant admitted to using the credit card, but explained in a hand-written statement that he found the wallet near a dumpster, took the credit cards, and threw the rest into
the dumpster. (1)

 At trial, Brooks gave a detailed account of the robbery. He explained that after he made a delivery,
two individuals approached him. One of the individuals shoved Brooks up against his car door and placed
a grey automatic handgun against the back of his neck. Brooks managed to turn around and see one face,
but was turned around immediately and shoved to the ground. One of the individuals held Brooks down
while the other rifled through Brooks' pockets. Brooks again looked over his left shoulder. This second
time, he claimed he was able to get a good look at both faces. Brooks identified appellant as one of the
individuals who robbed him.

 On cross-examination, appellant's trial counsel impeached Brooks' identification of appellant. 
Counsel asked Brooks about his initial description given to an officer on the night of the offense. Brooks
described one of the individuals as approximately eighteen years old, wearing a green T-shirt and black
pants. He also described the other individual as being approximately five feet tall and twelve- to thirteen-years-old. Counsel then turned to a subsequent identification made by Brooks. Brooks identified one of
the individuals as Billy Don Smith, who already had been convicted for this offense. When asked if Smith
was the person described as being eighteen years old and wearing a green shirt and black pants, Brooks
replied, "I believe it was." Counsel previously established through Detective Abbott that the twelve- to
thirteen-year-old individual was never located. Appellant was twenty years old at the time of the offense. 
Finally, counsel turned to Brooks' identification of a photograph of appellant. Counsel showed Brooks
appellant's picture used in the photograph spread and asked, "Is this the suspect that had the gun?" 
Brooks replied, "That's the one that had the gun." Counsel then showed Brooks a copy of a statement
made to a detective during the identification of Smith where he identified Smith as "the one that had the
gun." The court thereafter excused Brooks and the State closed its case-in-chief.

 After a discussion regarding the admissibility of appellant's statement to police, appellant's trial
counsel indicated that the defense would rest without calling any witnesses. When the court asked
appellant if he agreed, he replied, "Hold on a second." During a pause in the proceedings, the court
allowed appellant to confer with his counsel regarding the decision. The trial court then asked appellant
about his decision:

 THE COURT: Have you had a chance, Mr. Jones, to talk to your lawyer about your
options, understanding this Court doesn't care what you do or don't do? I just want to
make sure y'all have the opportunity to carefully consider your choices, and that we go
forward according to your wishes, and what you and your attorney think is in your best
interest, you understand what I'm saying?


 THE DEFENDANT: Yes, sir, Your Honor.


 THE COURT: Your attorney has indicated that he intends to rest behind the State and
attack their case as a defense rather than put on affirmative evidence. Is that okay with
you?


 THE DEFENDANT: Yes, Your Honor.


During his closing argument, appellant's trial counsel focused on Brooks' identification:

 Now, ladies and gentlemen, this case obviously hinges on identity. Identity was so
important in this case because Mr. Brooks identified Billy Don Smith as the gunman. And
Billy Don Smith was convicted.


 Now, you heard Mr. Brooks sit up there and tell y'all, point out Mr. Jones. That Mr.
Jones was the gunman. He said two different things.


 ***


 He admitted it. He said I did identify Billy Don Smith as the gunman. But in court he
pointed at him and said he was the gunman, but then he recanted when I got to ask him
some cross-examination questions that that wasn't true.


This defense did not sway the jury and, ultimately, it returned a guilty verdict. The trial court sentenced
appellant to ten years imprisonment and appointed new counsel to handle his appeal.

 Appellate counsel filed a motion for new trial raising ineffective assistance of counsel and requesting
a hearing on the motion. The motion specifically alleged that trial counsel "failed to request a continuance
or seek other appropriate remedies when defense witnesses did not appear to testify at the trial of this
case." The motion set forth that subpoenas were issued for three individuals: Sheila Rene Gordon, Debra
Woods, (2) and Lloyd Turner. According to the motion, "investigation indicated that their testimony would
establish Defendant's innocence." Although subpoenas were issued, the witnesses were not served nor
did they appear to testify at trial. The trial court conducted the hearing on the motion over the course of
two separate days.

 On the first day of the hearing, January 16, 2001, appellant's appellate counsel called trial counsel
to testify. He explained that he discussed the possibility of an alibi defense with appellant "at least a couple
of months prior to trial." Appellant gave trial counsel three names of potential alibi witnesses: Gordon,
Woods, and Turner. The basis of the theory was that appellant was with these three individuals at
Gordon's apartment on the night of the robbery. Trial counsel's investigators tried to locate the three
individuals. Of the three witnesses, however, the investigator located only Woods. Trial counsel testified
that subpoenas were issued for the three individuals one to two days before trial, but none were ever
served. He explained that his investigator was unable to serve Woods because she failed to meet him at
a prearranged time. Trial counsel then went into his explanation for not requesting a continuance:

 When the trial started, we were still under the impression that we would be able to locate
these witnesses and that they weren't avoiding us, and so we didn't file a motion prior to
trial, and at the close of State's evidence, we made a strategic decision to not continue or
ask for a Motion for Continuance because we felt that we stood a good chance that the
State didn't put on enough evidence to find the Defendant guilty.


When asked why appellant did not take the stand to testify as to the alibi, trial counsel explained, "He had
another extraneous offense that certainly might be subject to testifying about, and we advised him against
it, and he agreed with us and agreed that that's not something he wanted to do, also." (3) Trial counsel finally
testified that he and his co-counsel went over the decision not to seek a continuance "carefully" with
appellant; appellant ultimately agreed with the strategy.

 The investigator for appellate counsel, Ron Pendergraf, also testified. Appointed to assist appellate
counsel shortly before the hearing, he explained that, in the two weeks he had prior to the hearing to
investigate the three witnesses, he was also having difficulty locating any of them. He did receive a possible
address for Gordon and left a business card requesting that she call him. When asked if given additional
time he could locate the remaining witnesses, he acknowledged that it was possible.

 It appears from the record that, during a recess, the parties discovered Gordon's whereabouts for
the first time; she was incarcerated in the Tarrant County jail awaiting transfer to a drug-treatment program. 
Gordon was called to testify. Gordon stated that she and appellant were living together for a period of time
in 1999. Gordon testified that, on the evening of October 31, they were at her home playing dominoes
while her children were out trick-or-treating. When asked if appellant stayed at the residence throughout
the evening, she replied, " Yes." Gordon, however, was unable to recall if Woods or Turner was there that
evening. Instead, she testified that Billy Don Smith and another individual, Michael Franklin, were there
that night. She further testified that, while she spoke with a police detective sometime between
Thanksgiving and Christmas of 1999, she was never contacted by a private investigator in October or
November 2000. She was also never aware that a subpoena was issued for her to testify in this case, but
confirmed that she would have been willing to testify if she had been notified. 

 The trial court recessed the hearing to allow appellate counsel more time to locate the remaining
witnesses. Eight days later, the trial court reconvened and heard testimony from Pendergraf, the defense
investigator. He testified that, in the one-week recess, he located Franklin, but was still unable to find
Woods or Turner, despite finding Turner's place of business.

 The defense called Franklin to testify. According to his testimony, he was with appellant at
Gordon's apartment on the evening of October 31. Franklin also testified that Woods and Turner were
at the apartment that evening as well. He stated that, had appellant's trial counsel contacted him, he would
have been willing to testify at appellant's trial. On cross-examination, however, Franklin's credibility was
seriously undermined. He first testified that he and the appellant were at work the following day from 4:30
p.m. to approximately 10:30 p.m. Franklin reassured the court that this is what happened, despite the fact
that photographs were introduced into evidence at trial showing appellant at the Just for Feet store using
the stolen credit cards the following day at approximately 7:00 p.m. Further, while Gordon stated earlier
that Billy Don Smith was at her apartment the night of the robbery, Franklin testified that he had never
heard of that individual.

 The defense finally called appellant to testify. Appellant stated that, in addition to Woods and
Turner, he emphasized to his trial counsel using Gordon as an alibi witness because he was always at her
apartment. According to appellant, trial counsel never requested information on how to locate the
witnesses, nor did appellant ever meet with trial counsel's investigators regarding the location of the
witnesses; it was not until two or three days before the trial that trial counsel asked appellant for assistance
in locating the witnesses. Appellant claimed that he met Woods the morning of trial and that she
acknowledged her arrangement to meet with the defense investigator to be served and to testify at trial. 
Appellant then recounted his version of the events at trial at the close of the State's case-in-chief:

 [APPELLANT]: I mean, [trial counsel] said he felt like we had a pretty good case as far
as, you know, just what we had, just like the physical, it really wasn't just major evidence
against me except for just the credit card or whatever and that was it, and he felt like we
could do a -- had a pretty strong case or whatever.


 Q. Did he advise you of the possibility of a continuance?


 A. No.


 Q. Did he ask you if you wanted him to try to proceed with these witnesses?


 A. No.


 Q. Did he ask you if you agreed with his trial strategy?


 A. I don't really recall. I think so. To be honest, I think so.


 ***

 Q. Did [trial counsel] present it as an option that you could rest or call witnesses, or
did he present it as this is how it is going to happen, we're not going to call
witnesses, there's not really a choice?


 A. There's not really a choice.


On cross-examination, appellant explained why he did not personally object to trial counsel's decision to
rest and not move for a continuance: "At that point in time, I didn't know anything about we could get a
continuance, so if I don't know, how could I be sitting here saying I want a continuance?" Later on, when
asked about trial counsel's rationale for resting, appellant replied, "His opinion was that we go ahead and
rest because he felt like we had pretty much a good case with what we had." After hearing arguments from
both sides, the trial court denied the motion for new trial. 

 On appeal, appellant raised three points of error, arguing inter alia that he received ineffective
assistance of counsel, and that the trial court abused its discretion by denying the motion for new trial. (4) 
Appellant claimed that his trial counsel was ineffective (1) for failing to diligently investigate and present his
alibi defense during trial and (2) for failing to investigate employment records which would have established
an alibi to the extraneous robbery, evidence of which was introduced in the punishment phase of the trial. 
After an extensive narration of the facts surrounding the trial and hearing on the motion for new trial, the
court of appeals made a "list of findings":

 Thus, the record before us, developed by Jones at the hearing on his motion for new trial,
established that trial counsel was aware of Jones's alibi defense many months before trial;
that Jones provided the names of three alibi witnesses to his trial counsel; that counsel's
investigator located only one of the witnesses; that the one witness located, Woods,
corroborated that Jones was with her on the night of the robbery; that despite trial
counsel's knowledge that the case was set for trial, he failed to have subpoenas issued for
the alibi witnesses until only two days before trial, and then failed to get them served; that
at the beginning of trial, counsel still thought the alibi witnesses would be served and
intended to put on an alibi defense; that after the State rested, counsel made the strategic
decision to put on no defense because he believed the State's case was factually
insufficient; and that Gordon, Franklin, and Woods were available and their testimony
would have been helpful to Jones's defense.


Jones, slip op. at 22-23. The court then "turn[ed] to the question of whether this record affirmatively
demonstrates the ineffectiveness of Jones's counsel." Id. at 23. Claiming to apply great deference to
counsel's judgment, the court of appeals held that counsel's failure to secure service on the alibi witnesses
and move for a continuance to secure their presence at trial was not reasonable based on the facts and
circumstances existing at the time it was made. Id. at 23-24. According to the court, "[Appellant's] only
viable defense was to present his alibi"; by failing to secure the alibi witnesses presence at trial, the court
held, "counsel effectively deprived his client of any defense." Id. at 24. Having found that "counsel's
representation fell below an objective standard of reasonableness," the court then turned to the issue of
whether counsel's decision ultimately deprived appellant of a fair trial. Id. at 26.

 The court of appeals relied heavily on one of its earlier decisions, Shelton v. State, 841 S.W.2d
526, 527 (Tex. App.--Fort Worth 1992, no pet.), where the court held that the failure to call an alibi
witness called at the appellant's first trial, but not on retrial, amounted to ineffective assistance of counsel. 
Jones, slip op. at 27-28. (5) Comparing the circumstances of that case to this one, the court concluded that
appellant's trial counsel's single omission deprived appellant of a fair trial. Id. at 28. Accordingly, the court
held that trial court abused its discretion by denying appellant's motion for new trial.  Id. at 29.

 The Sixth Amendment right to counsel confers upon a defendant the right to effective assistance
of counsel. Strickland v. Washington, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674
(1984). It does not confer the right to perfect counsel. See Ex Parte Welborn, 785 S.W.2d 391, 393
(Tex. Crim. App. 1990). The Sixth Amendment "envisions counsel's playing a role that is critical to the
ability of the adversarial system to produce just results." Strickland, 466 U.S. at 685. Therefore, "The
benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the
proper functioning of the adversarial process that the trial cannot be relied on as having produced a just
result." Id. at 686.

 The United States Supreme Court set forth the framework for analyzing claims of ineffective 
assistance of counsel almost twenty years ago in Strickland v. Washington. While this Court and courts
of appeals throughout this State have referred to that framework many times, its guidance loses no weight:

 A convicted defendant's claim that counsel's assistance was so defective as to require
reversal of a conviction or death sentence has two components. First, the defendant must
show that counsel's performance was deficient. This requires showing that counsel made
errors so serious that counsel was not functioning as the "counsel" guaranteed the
defendant by the Sixth Amendment. Second, the defendant must show that the deficient
performance prejudiced the defense. This requires showing that counsel's errors were so
serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a
defendant makes both showings, it cannot be said that the conviction or death sentence
resulted from a breakdown in the adversary process that renders the result unreliable.


Id. at 687. 

 In considering whether counsel's performance was deficient, the defendant must show that
counsel's representation fell below an objective standard of reasonableness, one measured by prevailing
professional norms. Id. at 688. Further, appellate review of counsel's performance must be highly
deferential:

 It is all too tempting for a defendant to second-guess counsel's assistance after conviction
or adverse sentence, and it is all too easy for a court, examining counsel's defense after it
has proved unsuccessful, to conclude that a particular act or omission of counsel was
unreasonable. A fair assessment of attorney performance requires that every effort be
made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of
counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at
the time. Because of the difficulties inherent in making the evaluation, a court must indulge
a strong presumption that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the defendant must overcome the presumption that, under
the circumstances, the challenged action "might be considered sound trial strategy." 


Id. at 689; see also Bell v. Cone, 535 U.S. 685, 698-702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002)
(reiterating the importance of such a strong presumption). The Strickland Court warned that "[i]ntensive
scrutiny of counsel and rigid requirements for acceptable assistance could dampen the ardor and impair the
independence of defense counsel, discourage the acceptance of assigned cases, and undermine the trust
between attorney and client." Strickland, 466 U.S. at 690. Therefore, reviewing courts must make every
effort to eliminate the distorting effects of hindsight and judge the reasonableness of counsel's challenged
conduct, in light of all the circumstances, viewed as of the time of counsel's alleged conduct. Id.

 "Under normal circumstances, the record on direct appeal will not be sufficient to show that
counsel's representation was so deficient and so lacking in tactical or strategic decisionmaking as to
overcome the presumption that counsel's conduct was reasonable and professional." Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002); see Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App.
2001) ("Any allegation of ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness."). This is because the record usually lacks any
explanation by appellant's trial counsel for their acts or omissions which are the basis for the ineffectiveness
claim and an explanation needed, in most cases, in order to overcome the presumption of reasonable and
professional conduct. See Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999). Instead,
counsel's motives are usually developed through investigation and a hearing on a petition for writ of habeas
corpus. Id. at 814-15; Bone, 77 S.W.3d at 833 n.13. 

 But that is not the only mechanism for developing an ineffectiveness claim. An increasing number
of cases, including this one, use the motion for new trial as a vehicle for developing the necessary record. 
See Reyes v. State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993) (holding that ineffectiveness claims
may be raised in a motion for new trial); 42 Dix & Dawson, Texas Practice: Criminal Practice and
Procedure § 24.114 (2d ed. 2001 & Supp. 2003); see, e.g., State v. Kelley, 20 S.W.3d 147, 150 (Tex.
App.--Texarkana 2000, no pet.); Moore v. State, 4 S.W.3d 269, 277 (Tex. App.--Houston [14th Dist.]
1999, no pet.); Weaver v. State, 999 S.W.2d 913, 918 (Tex. App.--Waco 1999, no pet.)(addressing
ineffectiveness claims raised by motion for new trial).

 While the standards for reviewing ineffectiveness claims raised by a writ of habeas corpus are well
settled, the standards are not so clear for reviewing claims raised on a motion for new trial. In this case,
the court of appeals summarily held that, because counsel was ineffective, it followed that the trial court
abused its discretion by denying the motion for new trial. 

 Typically, a trial court's ruling denying a motion for new trial is reviewed under an abuse of
discretion standard. Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). Under that
standard, an appellate court must not substitute its judgment for that of the trial court; rather, it must decide
whether the trial court's decision was arbitrary or unreasonable. Lewis v. State, 911 S.W.2d 1, 7 (Tex.
Crim. App. 1995). The problem is that the Supreme Court has explicitly held that "both the performance
and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." Strickland,
466 U.S. at 698 (citing Cuyler v. Sullivan, 446 U.S.335, 342, 100 S. Ct. 1708, 64 l. Ed. 2d 333
(1980)); see also Williams v. Taylor, 529 U.S. 362, 419 ("While the determination of "prejudice" in the
legal sense may be a question of law, the subsidiary inquiries are heavily factbound.").

 The Court in Strickland indicated that, although the issue of whether counsel was ineffective
contained subsidiary questions of historical fact, in that case, it was bound by neither the state court's, nor
by the federal district court's conclusion that counsel was effective. See Strickland, 466 U.S. at 698. (6) 
The same standard applies here where the trial court denied appellant's motion for new trial, impliedly
finding that counsel was not ineffective. Although we typically review the decision to grant or deny a motion
for new trial for an abuse of discretion, we are not bound by the trial court's conclusion that counsel was
not ineffective. "The overriding principle, at least with respect to constitutional questions, is that where the
trial court 'is not in an appreciably better position' than the appellate court to decide the issue, the appellate
court may independently determine the issue while affording deference to the trial court's findings on
subsidiary factual questions." Villareal v. State, 935 S.W.2d 134, 139 (Tex. Crim. App. 1996)
(McCormick, P.J., concurring) (citing Miller v. Fenton, 474 U.S. 104, 106 S. Ct. 445, 450-53, 88 L.
Ed. 2d 405 (1985)). "This does not mean the reviewing court should not 'give great weight' to a trial
court's 'considered [legal] conclusions' or its application of the relevant legal principle to the particular facts
of the case." Id. (citing Miller, 106 S. Ct. at 451). Appellate courts, however, "should not abandon their
'primary function as an expositor of law' or their duty to protect our constitutional rights." Id. (citing Miller,
106 S. Ct. at 451, 453).

 The problem we are faced with in this case is that numerous conflicts exist in the testimony of all
the witnesses concerning both whether counsel's representation fell below the requisite standard and
whether counsel's actions prejudiced the defense. For instance, trial counsel testified that he and his
partner went over the decision to rest with appellant "carefully" at the close of the State's case. According
to trial counsel, "[H]e did make an informed decision along with us when we decided not to put on a
Defense case and we rested." The trial court's discourse with appellant at trial, shortly before the defense
rested, ensuring that appellant concurred and understood the decision to rest, only strengthens this position. 
At the motion for new trial hearing, however, appellant testified to the contrary: 

 [APPELLATE COUNSEL]: Did he put it to you as an option of calling these witnesses
or did he present it to you as they are not going to be called?


 [APPELLANT]: It was really like the fact that, like, we really don't have a choice.


 ***


 Q. Mr. Jones, did you want witnesses called in your defense?


 A. Yes, ma'am.


 Q. If you had known there was the possibility of asking for a continuance, even for possibly
as short as a day, to locate these witnesses, would you have asked your counsel, your trial
counsel to do that?


 A. Yes, ma'am.


 Further conflicts are found in the testimony of the witnesses who testified at the motion for new trial
hearing regarding the alibi. Appellant's trial counsel stated that, based on what appellant told him, there
were three potential alibi witnesses: Woods, Gordon, and Turner. When Gordon was called to testify at
the hearing, however, she could not recall whether Woods or Turner was at her apartment that evening. 
Instead, contrary to appellant's version of events, she claimed Franklin and Billy Don Smith were present
that evening. Franklin then testified that while appellant was at Gordon's apartment along with Woods and
Turner, he had never heard of Smith.

 The trial court was in the best position to evaluate the credibility of the witnesses and resolve such
conflicts. Strickland, 466 U.S. at 698; Kober v. State, 988 S.W.2d 230, 233 (Tex. Crim. App. 1999). 
The trial court could have chosen to believe or disbelieve all or any part of the witnesses' testimony. See
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The role of an appellate court is limited to
viewing the evidence in the light most favorable to the trial court's ruling and insuring that the standards used
to determine whether counsel was ineffective are properly applied. See Strickland, 466 U.S. at 698;
Villareal, 935 S.W.2d at 139.

 Returning to the issue of whether appellant satisfied the first prong of the Strickland test, the court
of appeals noted that the failure to adequately investigate or to present an alibi defense has been held to
constitute ineffective assistance of counsel on "many occasions." See, e.g., Butler v. State, 716 S.W.2d
48, 55-56 (Tex. Crim. App. 1986); Shelton, 841 S.W.2d at 527; Doherty v. State, 781 S.W.2d 439,
442 (Tex. App.--Houston [1st Dist.] 1989, no pet.). But counsel's failure to call alibi witnesses is
"irrelevant absent a showing [by the appellant] that such witnesses were available and appellant would
benefit from their testimony." Butler, 716 S.W.2d at 55 (citing King v. State, 649 S.W.2d 42 (Tex. Crim.
App. 1983).

 In Butler v. State, this Court held that counsel's omissions in investigating his client's alibi defense
was not the result of reasonable professional judgment, and ultimately found that counsel was ineffective. 
Id. Testimony at the hearing on the appellant's motion for new trial revealed there was "far more substance
to appellant's alibi defense than was presented to the jury." Id. The appellant in that case was charged
with the aggravated robbery of a convenience store. At trial, his counsel raised the defenses of
misidentification and alibi, but called only one witness to testify as to the alibi, another Army officer who
lived with appellant. At the motion for new trial hearing, it was established that the Army officer's wife,
who did not testify, could verify the alibi with even greater detail. The only person who spoke with this
additional witness, however, was trial counsel's associate, who no longer worked with trial counsel by the
time the case was called for trial. In addition to the officer's wife, the appellant also acquired a phone bill
showing a call made to his sister in Wichita Falls at the time of the alleged robbery. When called to testify,
trial counsel stated that he never saw nor spoke with the housemate's wife and had talked with appellant's
sister, but was not sure if it was the sister appellant had spoken to the day of the robbery.

 This case is not like the case where counsel completely failed to independently investigate these alibi
witnesses. See Butler, 716 S.W.2d at 55. The record supports the finding that trial counsel, through his
investigator, attempted to locate the elusive witnesses, but was unable to do so. Counsel cannot be held
accountable for failing to locate Franklin, as no one even knew he was a potential alibi witness until the
hearing on the motion for new trial. (7) Even appellate counsel's investigator "had some difficulty locating
the witnesses." As the Supreme Court in Strickland pointed out, the duty to investigate is not absolute:

 [S]trategic choices made after thorough investigation of law and facts relevant to plausible
options are virtually unchallengeable; and strategic choices made after less than complete
investigation are reasonable precisely to the extent that reasonable professional judgments
support the limitations on investigation. In other words, counsel has a duty to make
reasonable investigations or to make a reasonable decision that makes particular
investigations unnecessary. In any ineffectiveness case, a particular decision not to
investigate must be directly assessed for reasonableness in all the circumstances,
applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 690-91 (emphasis added). In light of all the circumstances and applying a heavy
measure of deference to counsel's judgment, we find that the court of appeals erred. It was reasonable
for trial counsel to forego the alibi defense. 

 The court of appeals noted that counsel effectively deprived his client of his only viable defense by
choosing to rest after the State closed its case-in-chief. This is wholly incorrect. Trial counsel put forth a
viable defense that he opined was the best strategy: misidentification. At trial, counsel called the
complainant's identification into question through an extensive line of questioning. Then in closing
arguments, counsel carefully pointed out the deficiencies of the identification. 

 While the court of appeals claimed to apply great deference to trial counsel's judgment, the court's
decision did nothing more than second-guess counsel's decisions in hindsight, contrary to the explicit
direction of the Supreme Court. See Strickland, 466 U.S. at 689. Furthermore, the court failed to give
the trial court due deference to the trial court's implicit findings on subsidiary factual questions related to
the ineffectiveness inquiry. See id. at 698; Villareal, 935 S.W.2d at 139. Appellant failed to meet his
burden of showing that counsel's representation fell below an objective standard of reasonableness. 
Strickland, 466 U.S. at 687. Accordingly, the trial court properly denied appellant's motion for new trial.

 Because we find that appellant failed to meet the first prong of Strickland with regard to his first
claim, we do not need to review the court of appeals' analysis under the second prong of Strickland. See
id. at 697. Nevertheless, because the court of appeals only addressed appellant's first claim of ineffective
assistance of counsel, we must remand this case to the court of appeals for consideration of appellant's
second claim of ineffectiveness based on trial counsel's alleged failure to diligently investigate employment
records which would have allegedly established an alibi to the extraneous robbery, evidence of which was
introduced at the punishment phase of the trial. 

 The court of appeals' judgment is reversed and remanded for further consideration consistent with
this opinion.

 Hervey, J.

Delivered: January 28, 2004

Do Not Publish
1. 

 Interestingly, this version of events, recounted in appellant's statement and referenced by the court
of appeals in its opinion, was contradicted by appellant himself when he took the stand at the
motion for new trial hearing and testified that he received the wallet from the other individual
convicted for his participation in the robbery at issue, Billy Don Smith.
2. 

 Although the motion referred to this witness as Debra Woods, there are several instances in the
record where she is referred to as Debra Wood. For this opinion, we will refer to her as Debra
Woods.
3. 

 The extraneous offense was another aggravated robbery that took place on January 14, 2000,
while appellant was out on bond. Testimony regarding this offense came in at the punishment phase
of the trial. The alleged victim of this second robbery, also a pizza delivery person, testified that
he was held up at gunpoint and forced to the ground. The victim, an artist, went home and drew
a sketch of his assailant. The victim later identified appellant as one of the individuals who robbed
him.


 Trial counsel testified that appellant claimed he was at work at the time of this second robbery and
would be able to secure work records to prove that. But when counsel reviewed the records, he
discovered that the times did not match up.
4. 

 The other point of error was that the trial court erred in admitting evidence of the extraneous
offense during the guilt/innocence phase of the trial. The court of appeals affirmed the trial court's
decision to admit this evidence.
5. 

 The court of appeals' reliance on Shelton is questionable. This two-page opinion, decided without
the State filing a brief, gives a one-paragraph ineffectiveness analysis. Unlike this case, there is no
indication what the defense was at the retrial and no indication what trial counsel's strategy was for
not calling the alibi witness at the retrial.
6. 

 According to the Court,


 Ineffectiveness is not a question of "basic, primary, or historical [fact]," Rather,
like the question whether multiple representation in a particular case gave rise to
a conflict of interest, it is a mixed question of law and fact. Although state court
findings of fact made in the course of deciding an ineffectiveness claim are subject
to the deference requirement of [28 U.S.C.] § 2254(d), and although district court
findings are subject to the clearly erroneous standard of Federal Rule of Civil
Procedure 52(a), both the performance and prejudice components of the
ineffectiveness inquiry are mixed questions of law and fact.


 Strickland, 466 U.S. at 698 (citations omitted). 
7. 

 In fact, the appellant testified, "At the time I wasn't sure, you know, if Michael [Franklin] was
at -- there that night, so really I was just looking for [Turner, Woods, and Gordon]."