**Opinion issued August 27, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00811-CR

———————————

## EX PARTE JESSICA NICOLE MAUCK, Appellant

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1342193-A**

---

## MEMORANDUM OPINION

Appellant, Jessica Nicole Mauck, challenges the trial court's order denying her application for a writ of habeas corpus.[1]  In her sole issue, appellant contends

---

[1]    *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8 (Vernon 2015) (providing for appeal in case in which applicant seeks relief from order or judgment of conviction ordering community supervision).  A person who is subject to "collateral consequences" resulting from a conviction is considered confined.  *See*

that the trial court erred in denying her requested relief, which she sought on the ground that her trial counsel rendered ineffective assistance by not conducting a meaningful investigation before advising appellant to plead guilty and not advising her of available options and the consequences of her plea.

We affirm the order of the trial court.

## Background

On March 29, 2012, a Nassau Bay Police Department ("NBPD") officer stopped a car driven by Marshall McCormick for his failure to stop at a stop sign. When a second NBPD officer arrived at the scene, he asked appellant, who was a passenger in the car, whether she had anything in her possession that he should know about. She then reached into her purse and removed a baggy containing "a large amount of a green leafy substance." After the officer placed appellant in custody, another NBPD officer saw, on the passenger-side floorboard of the car, a small bag containing a white powder substance, which weighed 0.6 grams and field-tested positive for cocaine.

After her arrest and release on bond, appellant, on March 30, 2012, retained trial counsel, Kristi Walsdorf, to represent her in court. And, on April 2, 2012, appellant, with an agreed punishment recommendation from the State, pleaded

*State v. Collazo*, 264 S.W.3d 121, 126–27 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

2

guilty to the state-jail-felony offense of possession of a controlled substance, namely, cocaine, weighing less than one gram.[2] The trial court deferred a finding of guilt and placed appellant on community supervision for a period of two years. After appellant successfully completed her term of community supervision, the trial court discharged her on April 7, 2014.

In March 2014, appellant filed her verified application for a writ of habeas corpus, asserting that she had entered her guilty plea involuntarily and unknowingly. She argued that her trial counsel rendered ineffective assistance because counsel did not (1) conduct an investigation before advising appellant to enter the guilty plea, (2) admonish or advise her of the consequences of her plea, or (3) adequately advise her of available courses of action, including her right to request a resetting of the case to allow further investigation, request a pretrial diversion, or present evidence to a grand jury. Appellant asserted that her trial counsel advised her to plead guilty without obtaining a lab report confirming that the white powder substance seized from McCormick's car was cocaine; obtaining an incident or offense report describing the circumstances of the traffic stop and appellant's arrest; and interviewing any witnesses, including McCormick.

---

[2]     *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a), (b) (Vernon 2010).

Appellant explained that had she been apprised of alternatives to her plea or its consequences, she would not have pleaded guilty.

At a hearing on appellant's application, the trial court, without objection, admitted into evidence appellant's application, supplemental application, and supporting affidavits. In her affidavit, appellant testified:

> On Monday, April 2, 2012, I appeared in court with [trial counsel] who advised me that I needed to plead guilty to get probation or I would be sentenced to 2 years in a state jail prison. I told [trial counsel] that the cocaine I was being charged with was not mine and that I did not want a felony conviction on my record. [Trial counsel] advised me that the only way to avoid jail time was to take probation, which required me to plead guilty. [Trial counsel] told me that if I did not plead guilty I would spend 2 years in a state jail. Based on [trial counsel's] advice, and because I did not think I had any other choice, I pleaded guilty on my first court setting to 2 years deferred adjudication probation. [Trial counsel] never mentioned pre-trial diversion or informed me about the grand jury process. I would not have plead guilty if I had been advised of my right to investigate this case, request pretrial diversion or submit a packet to the grand jury.

> [Trial counsel] never talked to me about my criminal record, and what would happen if I plead guilty and was placed on a deferred adjudication. . . .

> I am now unable to obtain employment because of the felony record that I have received. I started working for Chevron as a data entry clerk at 19. I worked my way up to a document controller for oil and gas contractors and held this position until the project I was working on got recycled in 2013. Due to my current record, I have not been able to apply for a job within the oil and gas industry. The policy of oil and gas companies, as well as oil and gas contractors[,] is to not hire applicants with a felony record. I have currently been unemployed for over a year and have to depend on my parents to support my son and I, as I am unable to obtain employment with a felony record.

4

In her affidavit, appellant's mother, Lisa Yarborough, testified that she and her ex-husband were at court with appellant on April 2, 2012. Appellant's trial counsel told them that the State "was willing to drop the marijuana charge and only charge for the cocaine"; if appellant went to trial, "the State could bring back up the marijuana charge"; and the State "had offered [appellant] a 3-year deferred adjudication deal." Yarborough explained that appellant thought that her only two options were either deferred adjudication or jail. Trial counsel did not explain to appellant what deferred adjudication involved or present to her the options of having her case presented to a grand jury, requesting a pretrial diversion, or filing a motion to suppress evidence. And Yarborough believed that appellant would not have pleaded guilty had she known that other options were available to her. Because appellant was "[s]cared to death with the threat of jail," she took the deal that day.

Appellant attached to her supplemental application the affidavits of three Harris County criminal defense attorneys. They each opined that a reasonably competent attorney in Harris County would not resolve a case for a client, who had no criminal background, by entering a plea on an initial setting without conducting an investigation, not reviewing an offense report or lab report before advising the client to plead guilty, not advising the client about alternatives to entering the plea, and not advising the client of the direct consequences of deferred adjudication.

5

Appellant's trial counsel, who was the only witness called at the habeas hearing, testified that she met with appellant and a family member on Friday, March 30, 2012. She explained that she would not have done any investigation on that Friday before the first court date on Monday, April 2, 2012, but, "in the usual course of business," she would have performed a background check of appellant to obtain her criminal history. However, she did not recall whether she did so in this case, noting that she "might have" done a criminal background check on McCormick. Without objection, the trial court admitted into evidence trial counsel's handwritten notes from her March 30, 2012 meeting with appellant.

Trial counsel further testified that she knew that appellant, at the time of her plea, did not have a criminal history. At the April 2, 2012 court appearance, trial counsel talked with the prosecutor for about twenty minutes and reviewed the State's file, which did not include a lab report or offense report.[3] The State's file did include a "probable cause information," reflecting that appellant did not have a

---

[3]    Although the trial court admitted into evidence a NBPD "Incident/Investigation Report," the record reflects that this report was not in the State's file at the time that appellant entered her plea. The report includes a "Reporting Officer Narrative," which reveals that an officer at the scene saw "a torn piece of bag on the passenger floor board" and "upon . . . picking up the paper he found a small baggy which contained a white powder substance with a weight of .6 grams." The report also includes a "Case Supplemental Report," which reveals that appellant stated that the seized marijuana belonged to McCormick and "she didn't know where the powder substance had come from." It also reveals that McCormick stated that he did not know anything about the marijuana or other contraband seized from his car.

criminal history, and a one-paragraph summary of appellant's arrest, with a handwritten note indicating that the car's driver had run a stop sign. Trial counsel explained that she was able to assess the case without a lab report or offense report because of what appellant had already told her, including that she had been "accused of [possessing] drugs, a couple of them"; had "confessed to the police when she was initially stopped"; "had confessed to the officer that she knew about the cocaine"; "was in possession of the cocaine"; and "had knowledge of the cocaine"; and "wanted to get the case done and over with."

The State initially offered appellant deferred adjudication with a three-year term of community supervision. Trial counsel told appellant that the State's file did not include a lab or offense report, and she advised appellant to reset the case and leave the State's offer open so that trial counsel "would have had time to explore any other options that were available, specifically getting the lab report." She noted that, in the normal course of her representation, she would have explained to appellant the possibility that the lab results could come back "negative."

On cross-examination, when appellant's habeas counsel asked trial counsel about her advice to appellant about potential defensive issues, trial counsel answered:

> My advice would have been to reset the case and wait and see what happens. . . .

7

Had it been my decision, I would have reset the case. [Appellant] was adamant that she was not willing to reset the case. She was not willing to wait. She wanted it done and over with. When she told me that, I went back to the D.A. and negotiated back down a year. So, I was able to get two years for her. Then I would have gone through a litany of why I do not like putting people on deferred or probation, and I would have tried every means to get her to reset the case and to give me more time. It was her choice and her decision to go forward.

When asked what options she presented to appellant, trial counsel answered:

She could have reset her case, we could have gotten all of the State's evidence, and we could have explored going to trial. I could have tried to negotiate a better plea deal for her. We could have tried to do pretrial diversion. We could have—in certain cases, I'm able to negotiate things where I'm even able to get dismissals. I would have explained all of her options to her.

Trial counsel explained, however, that she did not think that appellant was "an ideal candidate" for pretrial diversion because it was evident that, based on her conversation with appellant, "she had a drug problem." And trial counsel's notes of their meeting reflect that appellant was "[a]ddicted to scripts."

In regard to the State's plea-bargain offer, trial counsel testified:

I would have told [appellant] that the offer that the State was making her was a guarantee, that if she took the offer, her case would be done and over with and she would be on probation, but she would have to be better than gold while she was on probation in order not to violate it. Then I would have gone over all of the reasons I do not recommend anybody go on probation. It's quite a long litany. I do not like putting people on probation, so I will go on and on about all of the dangers about being on probation. And then I would have gone over the fact that I would have preferred to have more time and I would have liked to reset the case so we could have explore the cause more. There were other things that I could have done for her. I told her that and she chose to not go forward and do those.

8

Moreover, trial counsel noted that she discussed deferred adjudication extensively with appellant and explained how it "would have remained with her and all of its impacts." She would have told any client, and would have explained to appellant, that employers "are going to see" a deferred adjudication on the record. "That initial arrest and that paperwork is always going to be there." But, trial counsel would also have explained that "there would be no conviction so long as she completed" deferred adjudication. She would have told appellant that she would have to admit on most job applications to having a felony offense on her record; "it would follow [her] for the remainder of [her] life, and that if it was actually on [her] record that it would be there forever." When asked whether she had told appellant that she would not be able to have the felony offense "completely removed" from her record, trial counsel answered that she "would have told [appellant] that there are some agencies, even though you are able to get these sealed, they are always able to look into your criminal record and see that there even though there's no adjudication." Trial counsel would also have informed appellant that the fact that she had been placed on community supervision would be considered if she ever were to have a child-custody issue and there was a mandatory waiting time to file a petition for an order of nondisclosure.

However, trial counsel did not know if she gave appellant a specific time period regarding any such petition.[4]

Finally, trial counsel testified that appellant's "best choice," based on the information that she had obtained from appellant and the police report, was deferred adjudication because appellant wanted the case "over with." "Had she wanted to do something else, then that wouldn't have been the best decision, but at that point in time, she simply wanted to get the case done and over with. So, it was her best choice." Appellant made her decision based on the information that trial counsel provided to her, and she chose to enter her plea against counsel's recommendation. Trial counsel wanted "more time" and generally "prefer[red her] clients to go to trial." At the end of her testimony, the State offered, and the trial court admitted into evidence, with no objection, trial counsel's affidavit.

The trial court denied appellant's requested habeas relief and issued findings of fact and conclusions of law. The trial court found, based on trial counsel's "credible testimony," in pertinent part, as follows:

> 16. . . . [Trial counsel], after becoming aware of the State's offer, met with [appellant] and gave her the following options: 1) accept the State's offer; 2) negotiate with the State for a better offer; or 3) reset the case so that an investigation could be completed. [Trial counsel] explained all of the options to [appellant] and

---

[4] A person whose adjudication for a felony offense is deferred may, upon her discharge and the dismissal of the case, petition for an order of nondisclosure to limit disclosure of the public criminal history record information related to the offense. TEX. GOV'T CODE ANN. § 411.081(d) (Vernon Supp. 2014).

recommended that [she] allow [trial counsel] to reset the case for [appellant]. [Trial counsel] explained to [appellant] that she wanted to reset the case so that she could review the offense report and laboratory report, speak with McCormick, and review case law regarding the stop and search . . . .

17. . . . [Trial counsel] informed [appellant] that the State's file did not include an offense report and therefore [trial counsel] had not had an opportunity to review it . . . .

18. . . . [Trial counsel] also informed [appellant] that the State's file did not include a laboratory report and therefore [trial counsel] had not had an opportunity to review the report . . . .

19. . . . [A]fter a consideration of her options, [appellant] requested that [trial counsel] get her the best possible deal from the State and plead the case on that first setting so that the case would be over . . . .

21. . . . [Trial counsel] informed [appellant] of the new two (2) year offer but again encouraged [appellant] to let her reset the case so that [trial counsel] could do a thorough investigation. However, [appellant] refused to reset the case and insisted on pleading guilty and accepting the State's offer of two (2) years Deferred Adjudication on the first setting . . . .

22. . . . [Appellant's] top priority in this case was to resolve the case as quickly as possible . . . .

The trial court further found Yarborough's affidavit testimony "to not be credible or persuasive." And it found the defense attorneys' affidavit testimony "to be unpersuasive due to their lack of knowledge of the confidential communications that occurred between [appellant] and [trial counsel], as well as being unfamiliar with the specific facts of the primary case."

11

Based on its fact findings, the trial court concluded that appellant failed to establish that her trial counsel's "conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different."

**Standard of Review**

An applicant for a writ of habeas corpus must prove her claims by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). We view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *See Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006); *Ex parte Murillo*, 389 S.W.3d 922, 926 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We note that the trial court is the sole finder of fact in a habeas proceeding, and we afford almost total deference to the court's determinations of historical fact that are supported by the record. *Ex pare Garcia*, 353 S.W.3d 785, 787–88 (Tex. Crim. App. 2011). We afford the same deference to the trial court's rulings on "applications of law to fact questions," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007). However, if the resolution of those ultimate questions turns on

an application of legal standards absent any credibility issue, we review the determination de novo. *Id*.

## Ineffective Assistance of Counsel

In her sole issue, appellant argues that the trial court erred in denying her habeas relief because, based on her trial counsel's ineffective assistance, she entered her plea unknowingly and involuntarily. To be valid, a plea must be entered voluntarily, knowingly, and intelligently. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2014); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008). A plea is not entered voluntarily and knowingly if made as the result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

To prove a claim of ineffective assistance of counsel, appellant must show that (1) her trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the

13

effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In regard to pleas of guilty, the focus of our prejudice inquiry is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). Appellant must show that (1) her trial counsel's advice to plead guilty was not within the wide range of competence required of a criminal defense attorney and (2) there is a reasonable probability that, but for counsel's errors, she would have pleaded "not guilty" and insisted on a trial. *Id.*; *Lopez*, 428 S.W.3d at 278 (citing *Ex parte Morrow,* 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)).

Appellant asserts that her trial counsel advised her to plead guilty without conducting a reasonable investigation, i.e., without obtaining and reviewing the lab and offense reports and interviewing witnesses, including McCormick. Thus, trial counsel failed to advance any "viable defense available to [appellant]." Appellant

14

further asserts that her trial counsel failed to advise her of her available options, such as obtaining pretrial diversion or presenting evidence to a grand jury, and the direct consequences of deferring adjudication of her guilt, such as "informing her that the conviction could not be completely expunged and that certain public entities would still be able to see the felony conviction on her record." Appellant notes that had counsel advised her of her right to investigate the case, request pretrial diversion, or submit evidence to a grand jury, she would not have pleaded guilty.

Trial counsel has a duty to provide advice to her client about what plea to enter, and that advice should be informed by an adequate investigation of the facts of the case or based on a reasonable decision that an investigation is unnecessary. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010) (citing *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009); *Goodspeed v. State*, 187 S.W.3d 390, 392–93 (Tex. Crim. App. 2005)); *see Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066) (trial counsel must "make reasonable investigations or . . . make a reasonable decision that makes particular investigations unnecessary"). Thus, counsel has an obligation to conduct a legal and factual investigation and seek out and interview witnesses. *See Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990). However, a "claim for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a

15

showing of what the investigation would have revealed that reasonably could have changed the result of the case." *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007)).

Trial counsel also has a duty to inform her client about the direct and punitive consequences of her guilty plea. *See Arreola v. State,* 207 S.W.3d 387, 392 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, a defendant's claim that she was "misinformed by counsel, standing alone, is not enough for us to hold [her] plea was involuntary." *Fimberg v. State*, 922 S.W.2d 205, 208 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd).

Here, the evidence supports the trial court's findings and conclusions that appellant's trial counsel advised her about her options and the consequences of deferring adjudication of her guilt. Trial counsel's testimony reflects that she met with appellant and discussed the facts of her arrest. On April 2, 2012, the day of the first court setting, trial counsel reviewed the State's file, discussed the case with the State, and told appellant that the State's file did not include a lab or an offense report. Trial counsel explained to appellant her options, including accepting the State's offer of deferring adjudication of her guilt, negotiating for a better offer, or resetting the case. And counsel actually recommended to appellant that they request at least one resetting of the case so that counsel, at the least, could

16

review the lab and offense reports,[5] and interview McCormick. Counsel further explained that appellant wanted to plead guilty on the first setting so that the case would be over. Based on appellant's request, trial counsel negotiated with the State for an offer of deferring adjudication of her guilt and placing her on community supervision for a period of two years. Trial counsel informed appellant of this offer and urged appellant to let her reset the case so she could investigate. Although appellant testified that she did not want a felony offense on her record, trial counsel advised her that, by deferring adjudication of her guilt and accepting community supervision, the offense "would have remained with her and all of its impacts." Trial counsel also told appellant about the possibility of obtaining pretrial diversion.

In trying a case, a criminal-defense lawyer controls the progress of the case except for three decisions reserved to the client: (1) how to plead to the charges against her, (2) whether to be tried by a jury or the court, and (3) whether to testify on her own behalf. *See Burnett v. State*, 642 S.W.2d 765, 768 n.8 (Tex. Crim.

---

[5] The offense report, attached to appellant's application and admitted into evidence, states that the officers found the white powder substance on the passenger side of the floorboard of McCormick's car and appellant told the officers that the marijuana belonged to McCormick, but "she didn't know where the powder substance had come from." The report further states that McCormick told the officers that he had no knowledge of the marijuana or "other contraband that was found." The report also indicates that an officer saw "a torn piece of bag on the passenger floor board" and, after picking up the paper, found a small baggy with a white powder substance.

App. 1982).  Thus, the decision to plead guilty is the personal decision of the accused. *See Moore v. State*, 4 S.W.3d 269, 276 (Tex. App.—Houston [14th Dist.] 1999, no pet.).  We conclude that the record supports the trial court's finding that appellant "insisted on pleading guilty" and accepted the State's offer of deferring adjudication of her guilt with a two-year term of community supervision.  The record also supports the trial court findings that, although trial counsel advised appellant to "reset the case" so she "could do a thorough investigation," appellant "insisted on pleading guilty and accepting the State's offer."

Considering the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's findings of fact and conclusions of law supported by the record, we conclude that appellant has not met the first prong of *Strickland* and the trial court did not err in denying appellant's requested relief.

We overrule appellant's sole issue.

**Conclusion**

We affirm the order of the trial court denying appellant habeas relief.


Terry Jennings
Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish.   TEX. R. APP. P. 47.2(b).